Argued and submitted November 2, accused suspended from the practice of law for 91 days commencing on the effective date of this decision issued December 16, 1993, reconsideration denied April 5, 1994

## In re Complaint as to the Conduct of

# WILLIS E. GRESHAM, Jr.,
*Accused.*

## (OSB 91-61, 91-77; SC S40242)

864 P2d 360

Willis E. Gresham, Jr., Portland, argued the cause and filed the briefs *in propria persona.*

Lia Saroyan, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

This lawyer discipline case involves claims of professional misconduct by Willis E. Gresham, Jr. (the accused). The charges arise from the accused's handling of a decedent's estate and of a civil action involving conversion and title to real property. A trial panel found the accused guilty, imposed a 30-day suspension, and required that the accused pass the Multistate Professional Responsibility Examination. We also find the accused guilty. We impose a 91-day suspension from the practice of law.

The disciplinary rules that are alleged to have been violated are these:

### DR 6-101(A)

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

### DR 6-101(B)

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

### DR 1-102(A)(4)

"It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

The facts set forth below constitute our findings.

### THE HANSEN ESTATE

Mr. Hansen died in July 1986. His will left his estate to his surviving spouse. The will designated Mrs. Hansen as personal representative.

In the fall of 1986, at the request of Mrs. Hansen, the accused undertook the probate of Mr. Hansen's estate, and Mrs. Hansen was appointed as personal representative. On May 19, 1987, the accused filed a petition to probate the will.

On August 9, 1987, Mrs. Hansen's niece wrote to the accused, requesting a status report. The accused did not answer the letter. The accused ceased working on the estate sometime in the summer of 1987. The accused testified that

he did so because of Mrs. Hansen's "unwillingness to follow his judgment." Mrs. Hansen died in February 1988.

On April 17, 1989, the Washington County Probate Commissioner wrote to the accused, requesting a status report. The accused received the letter but did not answer it. On June 9, 1989, the Probate Commissioner sent the accused another letter. The accused telephoned the Probate Commissioner, telling her that he had not had contact with the personal representative for some time and requested 30 days to close the estate.

On November 1, 1989, the accused called the Probate Commissioner and told her that he needed an extension of time to close the estate, because the personal representative had died. The accused told the Probate Commissioner that he would have the estate closed by the end of 1989.

On January 10, 1990, the Probate Commissioner again wrote to the accused. The accused did not respond. On March 7, 1990, the Probate Commissioner again wrote to the accused. The accused did not respond.

On April 3, 1990, Circuit Judge Jon Lund wrote to the accused, requesting that the estate be closed or that a letter be sent explaining the present status of the estate. The accused did not respond. On May 21, 1990, Judge Lund issued an order to show cause, directed to the personal representative. Before the time set for the hearing on the order to show cause, Judge Lund telephoned the accused, who told Judge Lund that he had found a substitute personal representative, a niece. Judge Lund gave the accused 60 days to close the estate, or the matter would be referred to the Oregon State Bar. On May 25, 1990, Judge Lund sent a confirming letter to the accused, repeating his demand that the estate be closed not later than July 25, 1990, or the matter would be referred to the Bar. Two months later, Judge Lund referred this matter to the Bar. In March 1991, another lawyer was retained, and the estate was closed on May 15, 1991.

■ We find that the accused violated DR 6-101(A) in failing to provide competent representation to a client. This was the first probate matter handled by the accused. He lacked the legal knowledge and skill reasonably necessary to

undertake the probate. His lack of preparation and thoroughness also is apparent. He failed to comply with the requirements of law, such as delivering information to the devisees and heirs, ORS 113.145(1), filing proof of delivery, ORS 113.145(4), and causing a notice to interested persons to be published in a newspaper, ORS 113.155(1).

We also find that the accused neglected a legal matter entrusted to him. DR 6-101(B). For long periods, the accused did nothing in the Hansen estate. Almost eight months passed between the time the Letters Testamentary were issued in June 1987 and the death of the personal representative in February 1988, which was more than enough time for the accused to have completed this probate. The accused repeatedly failed to respond to the court's requests for action in the matter. At no time did the accused advise either the Probate Commissioner or Judge Lund that he would not be closing the estate. By his own admission, the accused ceased working on the estate in the summer of 1987, but failed to notify either the court or his client of that fact.

We also find the accused guilty of violating DR 1-102(A)(4), which states that "[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." The accused's repeated failures to do anything to administer the estate — notwithstanding his repeated assurances to the court — were prejudicial to the administration of justice, requiring the court repeatedly to request information from the accused. Doing nothing in the estate prejudiced the court, as discussed below in paragraph 3 of the sanction section of this opinion.

■ The accused asserts an unusual defense. He claims that once he notified the Probate Commissioner that Mrs. Hansen had died, he "no longer had a client for whom legal representation could occur" and that it "was legally impossible for [him] to close the estate without having a client to represent," and he therefore did nothing. However correct his contention — that he no longer had a client — may be in the abstract, that would not justify doing nothing. At the least, he should have notified the court of the death of the personal representative. More to the point, this defense appears to be an afterthought. Throughout the events in the Hansen estate, the accused expressed no such concerns to

either the Probate Commissioner or to the judge. In fact, one of the heirs testified that, after Mrs. Hansen's death, the accused told her that he would attend to the closing of the estate. The accused's protestations here are contrary to the representations repeatedly made by him during the times in question.[1]

## THE REAL PROPERTY MATTER

In October 1989, the accused undertook to represent two plaintiffs in an action for quiet title and conversion. The trial occurred on May 4, 1990, resulting in a finding in favor of the plaintiffs and a damage award to the plaintiffs. The accused was to prepare the judgment. Despite repeated requests that he prepare the judgment, both from his clients and from colleagues in his office, he failed to do so. The clients eventually complained to the Bar and hired another lawyer, who closed the matter.

Here, too, we find that the accused violated DR 6-101(B) by neglecting a legal matter entrusted to him. There was no justifiable reason for delaying more than five months after trial the preparation of a judgment.

## SANCTION

■■ In determining the appropriate sanction for a lawyer who has violated the disciplinary rules, this court looks to the American Bar Association Standards for Imposing Lawyer's Sanctions (1991) (ABA Standards). The ABA Standards take into consideration four factors: (1) the ethical duty violated; (2) the lawyer's mental state (intentional, knowing, or negligent); (3) the extent of injury (actual or potential) caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. ABA Standard 3.0. We discuss each in turn.

### 1. *Ethical Duties Violated*

The accused violated his obligation to his clients in the Hansen matter by failing to provide competent legal

---

[1] We note ORS 113.215(1), which provides:

"When a personal representative dies * * *, if the personal representative was the sole or the last surviving personal representative and administration is not completed, the court shall appoint another personal representative in place of the personal representative."

The lawyer who replaced the accused in the estate promptly arranged for the appointment of another personal representative and closed the estate within three months.

representation and, in both cases, by neglecting legal matters entrusted to him. In addition, in the Hansen matter the accused violated a duty owed to the court by engaging in conduct prejudicial to the administration of justice.

### 2. *Mental State*

"Knowledge" is defined in the ABA Standards at page 17 as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." We find that the accused acted "knowingly" in both matters. He knew that his failure to do more than he did in both matters would result in an unreasonably long delay in getting the cases closed and that the delay would cause injury to his clients and to the courts.

### 3. *Injury*

In the Hansen matter, the client sustained an actual injury. The delay in getting the estate closed resulted in a delay in transferring the estate assets to those entitled to them. In addition, the accused's abandonment of the estate, his delay in responding to the court's inquiries, and his failure to meet the deadlines set by the court all resulted in actual prejudice to the administration of justice. A lawyer who neglects to meet deadlines set by the court or to keep the court informed as requested, as did the accused here, places an additional, unnecessary burden on the judicial system.

In the real property matter, the accused's neglect caused actual injury to his clients. They were delayed in collecting the judgment, they lost interest on the judgment, and they were delayed in obtaining clear title to their property.

### 4. *Aggravating and Mitigating Factors*

The ABA Standards also take into consideration aggravating or mitigating circumstances. ABA Standard 9.1. Mitigating factors present here include the absence of a prior disciplinary record, the absence of a dishonest or selfish motive, and inexperience in the practice of law. ABA Standard 9.32. Aggravating factors present here include misleading representations to the court (to the Probate Commissioner

and to Judge Lund) and a pattern of misconduct. ABA Standard 9.22. There also was a demonstrated lack of candor during the events in question, as well as in the accused's brief.

ABA Standard 4.42 states that "suspension is generally appropriate when a lawyer knowingly fails to perform services for a client" or "engages in a pattern of neglect and causes injury or potential injury to a client." ABA Standard 4.52 states that "generally suspension is appropriate when a lawyer engages in an area of practice in which the lawyer knows that he or she is not competent, and causes injury or potential injury to a client."

The consistent pattern of neglect demonstrated by the accused in these two cases, the harm sustained by the clients, and the accused's repeated lack of candor with the court convince us that his conduct in each case justifies a suspension. We conclude that a 91-day suspension is appropriate.[2]

The accused is suspended from the practice of law for 91 days commencing on the effective date of this decision. ORAP 14.05(2)(c).

---

[2] Matters need not have come to this. Lawyers occasionally get in "over their heads." Inaction, accompanied by anxiety and internal hand-wringing, sometimes results. In some cases, actionable negligence occurs. The Oregon State Bar Professional Liability Fund (PLF), in Bar publications and in notices sent to all members of the Bar, repeatedly has encouraged lawyers who find themselves in that situation to call the PLF for assistance. We echo that suggestion.