Argued and submitted May 5, accused is disbarred October 26, 1995

# In re Complaint as to the Conduct of

## DAVID JOHN BARBER,
*Accused.*

## (OSB 92-104; SC S41694)

904 P2d 620

Mary Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Susan D. Isaacs, Beaverton, argued the cause and filed the briefs for the accused.

Peter R. Jarvis and Bradley F. Tellam, of Stoel Rives Boley Jones & Grey, Portland, filed an *amicus curiae* brief.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar filed a formal complaint against the accused, alleging that he had violated several provisions of the Code of Professional Responsibility and a state statute governing lawyer discipline. A trial panel of the Disciplinary Board ordered that he be suspended from the practice of law for three years. Under ORS 9.536(2) and BR 10.1, review by this court is automatic. We review the record *de novo*, ORS 9.536(3); BR 10.6, find the accused guilty of all the charges and disbar him.

We find the following facts from the evidence in the record. The accused was admitted to the Bar in 1986. In October 1987, McKeever and Nelson retained the accused to represent them in a personal injury action arising out of a motor vehicle accident. At that time, the accused shared office space and was associated with lawyer Vernon L. Richards. McKeever and Nelson each signed a separate contingent fee agreement stating in part:

"I, ('Client') hereby retain the Law Offices of Vernon L. Richards and David John Barber ('Attorneys'), for injuries and/or damages pertaining to: Automobile accident dated on the 26 day of September, 1987."

During the summer of 1988, the accused learned that insurance proceeds potentially available to satisfy his clients' claims might not be adequate to compensate both clients fully for the injuries that they had suffered in the accident. Realizing that his clients would be competing for limited insurance proceeds, the accused informed McKeever and Nelson of the possibility of a conflict of interest arising from his joint representation of them. The accused told McKeever and Nelson that he could not represent one against the other and that they would have to decide between themselves how to divide any insurance proceeds. In September 1988, the accused learned that Nelson's injuries were more serious and, consequently, that her damages were greater than he previously had thought. However, the accused never disclosed in writing the nature and extent of a likely or actual conflict of interest, nor did he advise his clients to seek independent legal advice to determine whether consent to continued joint representation should be

given. The accused continued to represent McKeever and Nelson until they discharged him in October 1988.

Meanwhile, a dispute arose between Richards and the accused concerning, among other things, Richards' entitlement to share in the anticipated fees from the accused's representation of McKeever and Nelson. Richards contended that he was entitled to 35 percent of any fees, pursuant to an association agreement between Richards and the accused. On September 7, 1988, the accused sent Richards a letter stating that the accused did not intend to share any fees from the McKeever/Nelson litigation, because McKeever and Nelson were exclusively his clients. Relations between Richards and the accused became increasingly acrimonious. On September 23, 1988, Richards locked the accused out of their shared offices. Richards and his wife, who was working for Richards at the time, packed the accused's belongings and files into boxes and left them on the porch outside the offices for the accused to collect. The accused picked up his belongings and transported them to the law office of John McIlhenny, where the accused resumed his law practice. In January 1989, Richards filed an action against the accused, alleging breach of their association agreement and conversion.

Two months after McKeever and Nelson discharged the accused as their attorney, the accused filed a complaint against his former clients alleging that they had breached the contingent fee agreements by failing to pay him attorney fees after recovering insurance proceeds, pursuant to a settlement with the insurer of the other motor vehicle involved in the accident. The accused attached copies of the contingent fee agreements, signed by McKeever and Nelson, to his complaint. Those copies had been altered to delete Richards' name.

In January 1989, both McKeever and Nelson filed answers to the complaint, alleging that the contingent fee agreements were voidable for failure to comply with ORS 9.400(1)(c),[1] because they lacked a provision allowing the

---

[1] ORS 9.400 provides in part:

"(1) In any civil action arising out of bodily injury, death or property damage, including claims for emotional injury or distress, loss of care,

clients to rescind the fee agreements within 24 hours after signing. McKeever and Nelson asserted in their answers that they were electing to void the fee agreements. Shortly thereafter, McKeever's new lawyer asked the accused to produce an itemization of the time that he had expended on the McKeever case, a copy of the fee agreement and billing, and any supporting documentation. The accused responded that no itemization or supporting documents existed and that he already had produced a billing and the fee agreement.

In February 1989, the accused filed an amended complaint, adding a claim for *quantum meruit* against McKeever and Nelson. Again, he attached the altered contingent fee agreements. The amount sought by the accused in *quantum meruit* was the same as that which he claimed for breach of the contingent fee agreements.

McKeever and Nelson filed motions for summary judgment, on the ground that the agreements were unenforceable under ORS 9.400. McKeever's summary judgment motion also stated that the copies of the contingent fee agreements, attached to the accused's complaint, had been altered unilaterally to remove Richards' name. McKeever attached copies of the original contingent fee agreements, which identified both Richards and the accused as her lawyers, to the motion for summary judgment. The accused filed a response to the motion for summary judgment but did not address the issue of the alteration of the lawyers' names.

In May 1989, McKeever's lawyer undertook discovery and again requested documentation for the accused's *quantum meruit* claim. In response, the accused produced a statement detailing his services and the time spent on McKeever's case. In July 1989, the trial court entered an

comfort, companionship and society, and loss of consortium, if an attorney for a plaintiff in respect to any civil action enters into an agreement with the plaintiff whereby the attorney receives as a fee a percentage of the amount of any settlement or judgment awarded to the plaintiff:

"* * * * *

"(c) The contingent fee agreements must contain a provision allowing the plaintiff to rescind the agreement within 24 hours after signing upon written notice to the attorney.

"(2) Any contingent fee agreement entered into on or after September 26, 1987, that does not comply with the requirements of subsection (1) of this section is voidable."

order denying McKeever and Nelson's motions for summary judgment and transferring the case to inactive status

"until such time as either Vernon Richards is adjoined as a party plaintiff or until a final judicial determination is made that Vernon Richards has no interest in either of the claims for relief presented in [the accused's] amended complaint."

In March 1991, after Richards and the accused had settled their litigation, the accused moved to join Richards as a plaintiff in his action against McKeever and Nelson and to transfer the case back to active status. The trial court granted both motions. In August 1991, the accused filed a second amended complaint and attached, for the first time, unaltered copies of the original contingent fee agreements. This time, McKeever's lawyer asked Richards to produce any records of time that the accused had spent on the McKeever case. Richards produced ledger cards and the accused's original time sheets. Those ledger cards and time sheets reflected the same dates and tasks as indicated in the statement submitted by the accused. However, the accused's statement reported more than twice the time and expenses described in the ledger cards and time sheets submitted by Richards.[2]

■■ The issue before us is whether the Bar has proved ethical misconduct by clear and convincing evidence, as required by BR 5.2. "Clear and convincing evidence means that the truth of the facts asserted is highly probable." *In re Taylor*, 319 Or 595, 600, 878 P2d 1103 (1994).

### FIRST CAUSE OF COMPLAINT

■ In its first cause of complaint, the Bar alleged that the accused violated DR 5-105(A) and (B) (1988),[3] by undertaking representation of McKeever and Nelson, even though

---

[2] For example, according to Richards' documents, the accused spent 42.6 hours on the McKeever case while at Richards' office; but, according to the accused's statement, he spent 102.1 hours during the same period. In addition, Richards' documents indicate that the accused made 142 photocopies; the statement shows 363 photocopies.

[3] DR 5-105 (1988) was amended on September 12, 1988. Because the Bar alleged that the accused violated the conflict of interest rules both before and after that date, we refer to both DR 5-105 (1988) and the current version of that rule.

DR 5-105 (1988) provided in part:

"(A) A lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

his representation of one client likely would adversely affect his representation of the other, without obtaining their consent after full disclosure of the likely conflict of interest. The Bar also alleged that the accused violated DR 5-105(E)[4] by continuing to represent McKeever and Nelson after an actual conflict of interest had developed. The accused concedes that his conduct violated DR 5-105(E) and DR 5-105(A) and (B) (1988). We agree. *See In re Alstatt*, 321 Or 324, 330-31, 897 P2d 1164 (1995) (discussing similar charges). Accordingly, we conclude that the accused violated those disciplinary rules.

## SECOND CAUSE OF COMPLAINT

In its second cause of complaint, the Bar alleged that the accused knowingly attached altered copies of the contingent fee agreements to his complaint against McKeever and Nelson, in violation of DR 1-102(A)(3),[5] DR

---

"(B) A lawyer shall not continue employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each."

[4] DR 5-105 currently provides in part:

"(E) Except as provided in DR 5-105(F), a lawyer shall not represent multiple current clients in any matters when such representation would result in an actual or likely conflict.

"(F) A lawyer may represent multiple current clients in instances otherwise prohibited by DR 5-105(E) when such representation would not result in an actual conflict and when each client consents to the multiple representation after full disclosure."

DR 10-101(B)(1) defines the term "full disclosure" to mean

"an explanation sufficient to apprise the recipient of the potential adverse impact on the recipient, of the matter to which the recipient is asked to consent."

DR 10-101(B)(2) provides that, as used in DR 5-105,

" 'full disclosure' shall also include a recommendation that the recipient seek independent legal advice to determine if consent should be given and shall be contemporaneously confirmed in writing."

[5] DR 1-102(A) provides in part:

"It is professional misconduct for a lawyer to:

7-102(A)(4) to (6),[6] and ORS 9.527(4).[7] With respect to those charges, the trial panel found:

> "8.    Both of the contingency fee agreements attached to the complaint had been altered by the Accused, or at his direction, to delete Vernon Richards' name. When confronted with the fact that he had attached altered documents, the Accused filed an amended complaint, in both his name and that of Vernon Richards, attaching true copies of the contingent fee agreements.

> "9.    By attempting to sue Ms. McKeever and Ms. Nelson in his own name, using altered contingency fee agreements, the Accused deceitfully sought to avoid having to share the proceeds of the litigation with Mr. Richards. By altering the fee agreements or causing them to be altered, the Accused created false evidence which he filed with the court knowing it to be false."

The trial panel concluded that the accused was guilty of the charges alleged in the Bar's second cause of complaint.

The accused denies altering the contingent fee agreements or causing them to be altered, and he maintains that he was not aware that the copies of those agreements that he attached to his complaint had been altered to delete Richards' name. The accused argues that the evidence establishes that Richards or his wife probably altered the fee agreements to avoid a possible malpractice claim against

---

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[6] DR 7-102(A) provides in part:

"In the lawyer's representation of a client * * *, a lawyer shall not:
"* * * * *

"(4) Knowingly use perjured testimony or false evidence.

"(5) Knowingly make a false statement of law or fact.

"(6) Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false."

[7] ORS 9.527 provides in part:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:
"* * * * *

"(4) The member is guilty of willful deceit or misconduct in the legal profession."

Richards. The accused also argues that the trial panel erred in excluding testimony that would have bolstered his claim that Richards probably altered the fee agreements.

The Bar contends, first, that *someone* altered the fee agreements. Second, the Bar argues that it presented clear and convincing evidence that the accused had both a motive and an opportunity to do so. In support, the Bar relies on the uncontested fact that the altered fee agreements first emerged from the accused's office at a time when he and Richards were disputing who was entitled to any fees arising from the accused's representation of McKeever and Nelson. Third, the Bar argues that the trial panel correctly found that the accused was not a credible witness. Fourth, the Bar argues that there is no evidence in the record to support the accused's claim that Richards or his wife probably altered the fee agreements.

There is clear and convincing evidence that the accused had both a motive and an opportunity to alter the contingent fee agreements signed by McKeever and Nelson and to attach copies of the altered agreements to his complaint. When Richards ended his association with the accused, the accused had the original fee agreements in his possession. At that time, the accused and Richards disputed who was entitled to fees arising from the accused's representation of McKeever and Nelson. The accused claimed that he alone was entitled to those fees, because McKeever and Nelson were his clients alone. By deleting Richards' name from the fee agreements and attaching altered copies of those agreements to his complaint against McKeever and Nelson, the accused could bolster his claim that McKeever and Nelson were his clients and that only he was entitled to fees on their cases.

The accused argues that there is evidence in the record that refutes the trial panel's finding that he altered the fee agreements to avoid having to share with Richards any proceeds from his litigation against McKeever and Nelson. The accused first contends that, had he concocted such a scheme, he would have destroyed the original fee agreements so as not to leave them open to discovery. We are not persuaded. There are many possible reasons why the

accused would not have destroyed the originals of the altered fee agreements. One possibility is that he did not realize that he still had the original fee agreements after Richards had locked him out of their shared offices. Another possibility is that the accused retained the originals, because he thought that the issue of alteration never would arise.

The accused next argues that it is illogical that he would have altered the fee agreements to avoid sharing fees with Richards, because Richards' claim to the fees was based on his association agreement with the accused, not on the fact that the contingent fee agreements bore both Richards' and the accused's names. We also find that argument unpersuasive. Throughout his dispute with Richards, the accused claimed that he alone was entitled to any fees arising from his representation of McKeever and Nelson, notwithstanding his association agreement with Richards. The fact that *Richards* believed that the terms of the association agreement established conclusively his entitlement to a share of those fees does not establish that *the accused* had no motive for altering the fee agreements.

We next consider whether we should give any weight to the accused's testimony that he did not alter the fee agreements and was unaware that the copies that he had attached to his complaint had been altered. The trial panel found that the accused's testimony was not credible. This court typically has placed substantial reliance on the trial panel's determinations regarding the credibility of witnesses. *See, e.g., In re Samuels/Weiner*, 296 Or 224, 226, 674 P2d 1166 (1983) (so stating). Moreover, in this proceeding, there is direct evidence that the accused presented untruthful testimony to the trial panel.

In support of his claim of innocence, the accused relied, in part, on the affidavit of Lackey, who was McIlhenny's secretary at the time when the accused moved his practice to McIlhenny's law office. Lackey's affidavit contains several statements that tend to exculpate the accused, including the statement that Lackey firmly believed that the accused did not alter the fee agreements signed by McKeever and Nelson.

During a deposition that occurred prior to the hearing before the trial panel, counsel for the Bar asked the

accused whether he had participated in preparing the Lackey affidavit. The accused responded that he had not done so. Later, the accused's present secretary testified that she had transcribed the Lackey affidavit from a tape dictated by the accused and that the accused had edited the transcript on more than one occasion. When counsel for the Bar later questioned the accused about the discrepancy between his deposition testimony and the testimony of his secretary, the accused responded:

"When [counsel for the Bar] asked me if I participated in the preparation, I misunderstood the question thinking did I type it, and did I then give it to Mary Margaret to sign. And I don't type and I wanted to be clear that I did have an involvement in it but — again, I'm trying to be very specific on these words. I perhaps was not clear."

The trial panel found, and we also find, that the accused's testimony regarding his participation in the preparation of the Lackey affidavit was untruthful. Because the accused presented untruthful testimony that was material to the determination of his guilt, and because the trial panel that observed the accused's demeanor did not credit his testimony, we give no weight to the accused's testimony that he neither altered the fee agreements nor knew that they had been altered.

Finally, we consider the accused's claim that Richards or his wife probably altered the fee agreements in order to avoid a possible malpractice claim against Richards. The accused observes that Richards sent him a memorandum, dated September 9, 1988, in which Richards urged him to file an action on McKeever's and Nelson's behalf before the expiration of the statute of limitations on September 26, 1988. According to the accused, that memorandum establishes that Richards or his wife probably deleted Richards' name from the fee agreements in order to avoid a possible malpractice claim against Richards, in the event that the accused failed to file a timely complaint. The accused speculates that Richards or his wife then placed the altered agreements into the boxes of files that the accused picked up after being locked out of Richards' office on September 26, 1988.

The Bar argues that the accused's theory that Richards or his wife probably altered the fee agreements to avoid

malpractice exposure and then placed the altered agreements into the boxes containing the accused's files is inconsistent with the evidence in the record. We agree. On September 27, 1988, one day after the accused alleges that Richards or his wife deliberately placed the altered fee agreements into the accused's files, Richards wrote a letter to the insurer of the other motor vehicle involved in the accident, stating that Richards also was a party to the contingent fee agreements signed by McKeever and Nelson. In November 1988, Richards wrote a letter to the Bar mentioning that McKeever and Nelson had signed contingent fee agreements in both his name and the accused's name. Throughout this period, Richards consistently maintained that he was a party, with the accused, to the fee agreements signed by McKeever and Nelson. The accused presented no contrary evidence tending to show that Richards sought to erase evidence of his involvement in the McKeever/Nelson litigation once his association with the accused ended. The record does not support the accused's theory that Richards or his wife altered the fee agreements to avoid malpractice exposure.

The accused next argues that the trial panel erred by sustaining objections to testimony that, according to the accused, would have bolstered his theory that Richards probably had altered the fee agreements.

During the hearing before the trial panel, counsel for the accused asked one of Richards' former associates, Crook, to give his opinion regarding Richards' reputation for truth and veracity. Crook testified that he does not have a high opinion of Richards' truth and veracity. When the accused's lawyer attempted to elicit the basis for that opinion, the trial panel sustained an objection under the Oregon Evidence Code (OEC) 405.[8]

---

[8] The accused argues that the trial panel erred in ruling that Crook's opinion about Richards' reputation for truth and veracity was inadmissible. Our review of the record discloses that the trial panel *did* permit Crook to offer an opinion regarding Richards' truthfulness, but it did not permit Crook to explain the basis for his opinion. No party makes any other challenge to the admissibility of Crook's opinion testimony.

The accused argues that the Oregon Evidence Code does not apply in lawyer disciplinary proceedings and that the trial panel thus erred in sustaining an objection to Crook's testimony under OEC 405.

■        We agree that the trial panel erred by applying the Oregon Evidence Code in this proceeding. Lawyer disciplinary proceedings are *sui generis*, being neither civil nor criminal in nature. BR 1.3. They are governed by rules of procedure adopted by the Board of Governors of the Bar and approved by this court, pursuant to ORS 9.005(6)[9] and ORS 9.542. Those rules of procedure, rather than the Oregon Evidence Code, control whether evidence is admissible in a lawyer disciplinary hearing.

■        The accused argues that Crook's testimony regarding the basis for his opinion concerning Richards' reputation for truth and veracity was admissible under BR 5.1(a):

> "Trial panels may admit and give effect to evidence which possesses probative value commonly accepted by reasonably prudent persons in the conduct of their affairs. Incompetent, irrelevant, immaterial, and unduly repetitious evidence should be excluded at any hearing conducted pursuant to these rules."

The accused argues that Crook's testimony was relevant to his theory that Richards probably had altered the contingent fee agreements, because the testimony would have tended to undermine Richards' credibility as a witness. We agree.

At one point during the hearing, counsel for the Bar asked Richards whether he had any direct or indirect involvement in deleting his name from the contingent fee agreements signed by McKeever and Nelson. Richards responded that he had no involvement in altering the fee agreements. Evidence tending to demonstrate Richards' lack of credibility was relevant to determining how much weight should be given to Richards' testimony that he was not involved in deleting his name from the fee agreements. As Richards' former associate, Crook had personal knowledge of Richards' character and reputation for truth and veracity in the community. Therefore, Crook's testimony regarding the basis for

---

[9] Effective January 1, 1996, ORS 9.005(6) is renumbered as ORS 9.005(8). Or Laws 1995, ch 302, § 15.

his opinion possessed "probative value commonly accepted by reasonably prudent persons in the conduct of their affairs." BR 5.1(a). The trial panel erred by not permitting Crook to explain the basis for his opinion concerning Richards' reputation for truth and veracity.

■■ Next, we must consider whether the trial panel's error in excluding that testimony by Crook deprived the accused of a fair hearing. BR 5.1(b) provides:

> "No error in procedure, in admitting or excluding evidence, or in ruling on evidentiary or discovery questions shall invalidate a finding or decision unless upon a review of the record as a whole, a determination is made that a denial of a fair hearing to either the Bar or the accused has occurred."[10]

In this case, even if we were to assume that the erroneously excluded evidence would have destroyed Richards' credibility as a witness, that would not alter our conclusion that evidence in the record does not prove that Richards deleted his name from the fee agreements signed by McKeever and Nelson. Evidence establishing Richards' lack of credibility is relevant only in determining how much weight should be given to Richards' testimony. None of the excluded evidence tends to show affirmatively that Richards altered the contingent fee agreements. We therefore conclude that the trial panel's error in excluding testimony pertaining to Richards' credibility did not deprive the accused of a fair hearing.

The accused next argues that the trial panel erred when it prevented him from eliciting both from Richards and from Crook the circumstances surrounding Crook's departure from Richards' law office. The trial panel excluded that evidence on the ground that it was irrelevant. We agree with the trial panel that evidence concerning the circumstances of Crook's departure from Richards' law office was not shown by the accused to be relevant to any issue in this proceeding. The trial panel did not err in excluding that evidence.

---

[10] The accused failed to make an offer of proof regarding the excluded evidence. Henceforth, this court will not consider a claim under BR 5.1(b) that an erroneous ruling excluding evidence denied a party a fair hearing, unless the aggrieved party makes an offer of proof on the record regarding the excluded evidence.

For the following reasons, we conclude that the Bar established, by clear and convincing evidence, that the accused intentionally altered, or directed someone else to alter, the contingent fee agreements signed by McKeever and Nelson. First, it is undisputed that someone altered the fee agreements. Second, the Bar presented clear and convincing evidence that the accused had both a motive and an opportunity to do so. Third, we give no weight to the accused's testimony that he did not alter the fee agreements or know that the copies of those agreements that he attached to his complaint had been altered. Fourth, we conclude that the record is devoid of evidence to support the accused's theory that someone else — either Richards or his wife — altered the agreements. Because we can perceive no reasonable likelihood that anyone other than the accused made the alterations, we conclude that the accused made them.

■ We find the accused guilty of violating DR 1-102(A)(3), DR 7-102(A)(4) to (6), and ORS 9.527(4). By intentionally causing deletion of Richards' name from the contingent fee agreements and by attaching altered copies of those agreements to his complaint against McKeever and Nelson, the accused knowingly made a false statement of fact and knowingly created and used false evidence, in violation of DR 7-102(A)(4) to (6). His conduct also involved "dishonesty, fraud, deceit or misrepresentation" in violation of DR 1-102(A)(3) and "willful deceit or misconduct in the legal profession" in violation of ORS 9.527(4).

### THIRD CAUSE OF COMPLAINT

In its third cause of complaint, the Bar alleged that the accused deliberately misrepresented his time and expenses on the statement that he produced to support his *quantum meruit* claim against McKeever, in violation of DR 1-102(A)(3), DR 7-102(A)(4) to (6), and DR 2-106(A).[11] With respect to those charges, the trial panel found:

> "While each date and task shown on the itemized billing prepared by the Accused and produced in connection with the fee dispute accurately reflected those dates and tasks noted on the original time records, the times expended and

---

[11] DR 2-106(A) provides:

"A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee."

costs incurred were grossly inflated on the itemized billings for nearly every entry. The Accused padded his fees to support a quantum meruit claim roughly equal[12] to the fee that he would have obtained from an enforceable contingency fee contract. The bill padding constituted an attempt to charge an illegal or clearly excessive fee, as well as conduct involving dishonesty."

Based on that finding, the trial panel found the accused guilty of the charges in the Bar's third cause of complaint.

The accused argues that the quoted finding is not supported by clear and convincing evidence in the record. He maintains that the statement that he produced is a reasonable estimate of the time and expenses that he incurred on McKeever's behalf.

The Bar argues that the evidence in the record establishes that it is highly probable that the accused padded his statement of time and expenses to support his *quantum meruit* claim against McKeever. In support, the Bar first observes that the statement describes the same tasks and dates as the documents produced by Richards, except that the entries in the statement are, on average, two and one-half times higher than the entries in the billing records produced by Richards. Second, the Bar observes that the accused did not produce the statement until after he had amended his complaint to add a *quantum meruit* claim. Earlier, the accused had claimed that no documentation or itemization of his time and expenses existed. Third, the Bar observes that the statement supported *quantum meruit* damages equal to the damages that the accused sought for breach of the contingent fee agreement. Fourth, the Bar argues that the accused offered no plausible explanation for the discrepancies between the statement that he produced and the billing records produced by Richards, nor did he explain credibly the coincidence that the statement supported damages in *quantum meruit* equal to the damages claimed for breach of the fee agreements.

We agree with the Bar. The evidence establishes that it is highly probable that the accused intentionally misrepresented his time and expenses on the statement to support his *quantum meruit* claim against McKeever. We next

---

[12] As noted above, the accused sought identical amounts in his *quantum meruit* and breach of contract claims.

consider whether the accused offered a credible explanation for those discrepancies or for the fact that the statement supported damages in *quantum meruit* equal to the damages that he sought for breach of contract.

The accused maintains that the reason why there are discrepancies between the statement that he produced and the billing records produced by Richards is that he did not report all his research time and expenses while working in Richards' office. The accused explains that he had no reason to submit complete records of his time and expenses, because he was representing McKeever and Nelson on a contingent fee basis. He claims that he kept track of additional research time and expenses on separate slips of paper and that, after he was locked out of Richards' office, he directed McIlhenny's secretary, Lackey, to make a computer record of his time and expenses based on the information on those slips of paper. According to the accused, Lackey destroyed the slips of paper after entering the information into computer.

In support of that explanation, the accused relies on Lackey's affidavit, which confirmed that she entered the accused's time records into a computer after the accused was locked out of Richards' office and that those time records consisted of slips of paper that she discarded upon entry. The accused also relies on McIlhenny's testimony, which confirmed that Lackey entered the accused's time records shortly after the accused was locked out of Richards' office and that Lackey typically discarded billing slips upon entry. The accused explains that the reason why the dates and tasks described in the statement are identical to those described in the ledger cards and time sheets produced by Richards is that he used Richards' billing records as a reference when reconstructing the time that he actually had spent on McKeever's case, because those records provided the best estimate of when he had performed the work.

Finally, the accused relies on the testimony of Palmer, with whom the accused worked as a new lawyer before his association with Richards. Palmer testified that he terminated the accused's employment, because the accused spent more time on research projects than was to be expected for a new lawyer. The accused explains that his propensity to research issues more than necessary explains why he spent so much time researching McKeever's case.

We agree with the Bar that the accused's explanation for the discrepancies between the statement and the billing records produced by Richards is not credible. The accused argues that he had no reason to report all the time and expenses incurred while researching McKeever's case, because he represented McKeever on a contingent fee basis. However, the evidence establishes that the accused *did* produce time sheets, while at Richards' office, detailing services that he performed for McKeever's case. The accused does not explain credibly why he would have reported some of his time and expenses on those time sheets, but kept separate records on slips of paper that he never submitted. In addition, when McKeever's lawyer first requested that the accused produce an itemization of time and expenses incurred on McKeever's behalf, the accused responded that no such documents existed. The accused does not explain why he failed, at that time, to produce the computer record that he now claims Lackey created from the slips of paper that she discarded upon entry.

Moreover, even if we were to accept the accused's explanation that he kept additional time records on slips of paper that were later destroyed, we cannot accept that the time and expenses recorded on those slips of paper coincidentally supported damages in *quantum meruit* equal to the damages sought for breach of the contingent fee agreements. The fact that, as a young lawyer, the accused generally had a tendency to spend more time than necessary researching cases does not explain that specific coincidence.

Finally, recalling our earlier discussion concerning the accused's untruthful testimony before the trial panel, we conclude that the accused was not a credible witness. We give no weight to his testimony that the statement was an accurate representation of the time that he spent on McKeever's case.

■    We conclude that there is clear and convincing evidence in the record that the accused intentionally misrepresented his time and expenses in the statement that he produced in support of his *quantum meruit* claim against McKeever. We therefore find the accused guilty of engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation," in violation of DR 1-102(A)(3), and of creating and using false evidence and making false statements of fact, in

violation of DR 7-102(A)(4) to (6). We also find the accused guilty of charging an illegal or clearly excessive fee in violation of DR 2-106(A).

## SANCTION

■ ■ In determining the appropriate sanction, we are guided by the American Bar Association *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). *In re Gresham*, 318 Or 162, 167, 864 P2d 360 (1993). Pursuant to those standards, we consider the following factors:

(1) the nature of the duty violated;

(2) the accused's mental state at the time of the violation;

(3) the extent of actual or potential injury caused by the misconduct; and

(4) the existence of any aggravating or mitigating circumstances. ABA Standard 3.0.

The accused breached his duty to his clients to avoid conflicts of interest. He also engaged in two acts of misconduct involving dishonesty, deceit, fraud, or misrepresentation, and attempted to collect an improper fee based on falsified time records.

With respect to the accused's mental state, we find that, in altering the contingent fee agreements to delete Richards' name and in producing falsified time records, the accused acted with a conscious objective to accomplish a particular result. That is what the ABA Standards describe as "intent," which is the most culpable mental state.

The accused's misconduct caused the potential for serious injury to the legal system and the legal profession. By filing an action in his name only and by deleting Richards' name from the fee agreements signed by his former clients, the accused created the potential to mislead the court and to undermine the judicial process. By producing a falsified billing record, the accused sought to interfere with the outcome of his litigation against McKeever. Those acts of misconduct created the potential to undermine the relationship of trust and confidence between the public and the legal profession.

There are several aggravating factors present. The accused's misconduct was undertaken with a dishonest and

selfish motive. ABA Standard 9.22(b). The accused engaged in misconduct directed toward his clients at a time when they were particularly vulnerable, having suffered serious injuries in an motor vehicle accident. *Id.* at 9.22(h). The accused was untruthful in his testimony before the trial panel. *Id.* at 9.22(f). The accused engaged in a pattern of misconduct, committed multiple ethical violations, and refused to acknowledge the wrongful nature of his conduct. *Id.* at 9.22(c), (d), and (g). The only mitigating factors that we find applicable are the absence of a prior disciplinary record, *id.* at 9.32(a), and inexperience in the practice of law, *id.* at 9.32(f).

The following ABA Standards are applicable to our determination of the appropriate sanction. ABA Standard 6.11 provides:

"Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, * * * submits a false document * * * and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding."

ABA Standard 7.1 provides:

"Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."

We conclude that the appropriate sanction is disbarment.

The accused is disbarred.