Argued and submitted September 6, accused suspended from practice of law for 30 days, commencing 60 days from effective date of decision December 29, 2006, reconsideration denied February 6, 2007

## In re Complaint as to the Conduct of

## WADE P. BETTIS,
*Accused.*

## (OSB 05-31; SC S53231)

149 P3d 1194

Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego, argued the cause for the Oregon State Bar. With her on the briefs was Jonel Ricker, Bar Counsel.

Lawrence W. Erwin, Bend, argued the cause and filed the brief for the accused.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.*

PER CURIAM

* Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Walters, J., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) charged the accused with violating DR 6-101(A) (failure to provide competent representation).[1] A trial panel of the Disciplinary Board determined that the Bar had failed to prove that allegation and, therefore, concluded that the accused had not violated DR 6-101(A). The Bar seeks review of the trial panel decision. We review the record *de novo*. BR 10.1, BR 10.6. For the reasons that follow, we disagree with the trial panel's conclusion and suspend the accused from the practice of law for 30 days.

The accused has been a member of the Bar since 1972. During the events that led to this proceeding, the accused and Skinner, a lawyer, both were members of the Umatilla Morrow Consortium (consortium). The accused had formed the consortium for the purpose of assigning indigent defense cases to the consortium members in Morrow and Umatilla counties; the accused also was the consortium's administrator. Skinner and the accused often assisted each other with court appearances on indigent defense cases to which the consortium was appointed.

On January 15, 2004, the state charged a defendant, Gonzalez-Cardona, with first-degree rape, first-degree sodomy, first-degree kidnapping, first-degree sexual abuse, and fourth-degree assault. The following day, the state charged another defendant, Pinto-Roman, with second-degree and fourth-degree assault. The two cases were unrelated. The court appointed the consortium to represent both defendants. Skinner was assigned to represent Pinto-Roman, and the accused was assigned to represent Gonzalez-Cardona. Both defendants were in custody in the Umatilla County Jail. Skinner and the accused previously had agreed that the accused would handle all in-custody cases assigned to either of them due to his proximity to the Umatilla County Jail. The accused and Skinner also had agreed that Skinner would not handle sex crime cases.

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct at issue here occurred before that date, the Oregon Code of Professional Responsibility applies.

On January 20, 2004, Skinner appeared at Pinto-Roman's arraignment. At the arraignment, the court scheduled a preliminary hearing for January 22, 2004. With the aid of an interpreter, Pinto-Roman executed a Waiver of Indictment. Skinner subsequently informed the accused that she had explained the Waiver of Indictment to Pinto-Roman with the aid of an interpreter. According to the accused, he became Pinto-Roman's lawyer of record on February 2, 2004.[2]

On February 2, 2004, the accused arranged to meet with Pinto-Roman at the Umatilla County Jail. Instead, the staff at the Umatilla County Jail brought him Gonzalez-Cardona. During that meeting, the accused did not realize that he was speaking with Gonzalez-Cardona, rather than with Pinto-Roman. Gonzalez-Cardona spoke English and did not require an interpreter. Gonzalez-Cardona informed the accused that the state had charged him with rape and other sexual crimes. Throughout their meeting, Gonzalez-Cardona did not correct the accused when the accused referred to him as Pinto-Roman. The accused then proceeded to present to Gonzalez-Cardona an "Election to Waive Trial by Jury" form. The caption on the waiver form stated "State of Oregon v. Benjamin Pinto-Roman." Gonzalez-Cardona signed the waiver, and the accused subsequently filed with the court the "Election to Waive Trial by Jury" form in the Pinto-Roman case. Prior to the meeting, the accused had not reviewed the District Attorney's information and police reports concerning Pinto-Roman. The accused did not meet with Pinto-Roman during that visit to the Umatilla County Jail. Although Gonzalez-Cardona signed the "Election to Waive Trial by Jury" form for the Pinto-Roman case, the court ultimately set the Pinto-Roman case for a jury trial.

The following day, the accused met with Pinto-Roman at the Umatilla County Jail without the aid of an interpreter. After discovering that he could not communicate with Pinto-Roman without an interpreter, the accused ended

---

[2] In a letter to the Bar, the accused stated:

"The Umatilla-Morrow consortium was appointed to represent Mr. Pinto-Roman on January 22, 2004, and attorney Toni Skinner was the initial designated attorney for the Consortium. I became Mr. Pinto-Roman's attorney of record on or about February 2, 2004."

the meeting. A week later, the accused appeared with Pinto-Roman and an interpreter for a pretrial conference. That same day, the accused also appeared at a hearing with Gonzalez-Cardona and waived the preliminary hearing in the Gonzalez-Cardona case. After that hearing, the accused presented an "Election to Waive Trial by Jury" form to Gonzalez-Cardona, which Gonzalez-Cardona then signed.

Sometime in March 2004, Gonzalez-Cardona retained private counsel, and the accused was permitted to withdraw as counsel for Gonzalez-Cardona. On March 15, 2004, Pinto-Roman, with the accused's assistance, entered a guilty plea to fourth-degree assault. The court sentenced Pinto-Roman to probation and 80 hours of community service and dismissed the second-degree assault charge. Thereafter, Pinto-Roman complained to the Bar about the accused's representation. According to Pinto-Roman, the accused did not communicate with him sufficiently.

In an amended formal complaint, the Bar alleged that the accused had violated DR 6-101(A) in failing to exercise the skill, thoroughness, and preparation reasonably necessary for Pinto-Roman's representation.[3] DR 6-101(A) provides:

[3] Specifically, the Bar alleged that the accused:

"(a) Failed to confirm the identify of his client when he met with Gonzalez-Cardona on February 2, 2004;

"(b) Obtained the signature of Gonzalez-Cardona on the Election to Waive Trial by Jury form concerning the Pinto-Roman case;

"(c) Failed to review the District Attorney's information and police reports before he advised or requested an Election to Waive Trial by Jury [form] from a client;

"(d) Failed to conduct reasonable investigation and evaluation of the Pinto-Roman case before he presented and obtained an Election to Waive Trial by Jury [form] from a client he assumed was Pinto-Roman;

"(e) Failed to recognize that the circumstances and crimes identified by Gonzalez-Cardona on February 2, 2004, were not the circumstances and crimes with which Pinto-Roman was charged;

"(f) Failed to recognize that Gonzalez-Cardona had signed the Election to Waive Trial by Jury [form] in the Pinto-Roman case;

"(g) Failed to recognize that he had not obtained Pinto-Roman's signature on the Election to Waive Trial by Jury [form] concerning Pinto-Roman's case;

"(h) Failed to meet with and explain the Election to Waive Trial by Jury [form] to Pinto-Roman;

"(i) Failed to recognize that he had not met with and had not explained the Election to Waive Trial by Jury [form] to Pinto-Roman;

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

As noted, a trial panel found the accused not guilty of the charge.

■ On review, the Bar argues that the trial panel incorrectly concluded that the accused did not violate DR 6-101(A). According to the Bar "[t]he panel's findings and conclusion are contrary to the evidence, which include, but [are] not limited to, the accused's admissions and other evidence in this case." The Bar contends that the evidence before the trial panel required that it conclude that the accused had failed to provide competent representation in violation of DR 6-101(A).

■■ The Bar has the burden of establishing misconduct by clear and convincing evidence. BR 5.2. "Clear and convincing evidence" means evidence establishing that the truth of the facts asserted is highly probable. *In re Johnson*, 300 Or 52, 55, 707 P2d 573 (1985). Our standard of review is *de novo*; however, we give weight to any credibility findings made by a trial panel. *See In re Gustafson*, 333 Or 468, 470, 41 P3d 1063 (2002) (so stating).

■■ Whether a lawyer has failed to provide competent representation in violation of DR 6-101(A) "is a fact specific inquiry." *In re Eadie*, 333 Or 42, 60, 36 P3d 468 (2001). Furthermore, the "standard for assessing competence and diligence is an objective one" and, thus, is not focused on a lawyer's mental state. *See In re Magar*, 335 Or 306, 319, 66 P3d 1014 (2003) (stating principle). Moreover, in assessing whether a lawyer failed to provide competent representation, we assign no weight to the outcome of the underlying matter. *See In re Gastineau*, 317 Or 545, 555, 857 P2d 136 (1993) ("If a lawyer does a poor job, but the client fortuitously or through the efforts of others obtains a good result, that does not

"(j) Filed the Election to Waive Trial by Jury [form] in the Pinto-Roman case that was signed by Gonzalez-Cardona; and

"(k) Failed to notify the court that Pinto-Roman had not signed and had not agreed to waive trial by jury on February 2, 2004."

excuse the lawyer from providing competent representation or justify neglecting the case.").

■     This court has stated that the "best measure for determining lawyer competency is 'the standard stated in DR 6-101(A) itself.'" *Magar*, 335 Or at 320. That standard requires a lawyer to employ the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." DR 6-101(A). In *Magar*, this court recognized an important distinction between a lack of competence and negligence:

> "A lawyer—otherwise knowledgeable, skillful, thorough, and prepared—might commit a misstep for which he or she might have to respond in damages. That lawyer, although negligent, has not violated DR 6-101(A). Conversely, but less likely, a lawyer might act without the legal knowledge, skill, thoroughness, or preparation necessary for the representation, but commit no misstep that gives rise to an actionable negligence claim."

*Id.* at 320.

With that distinction in mind, we turn to the Bar's argument. According to the Bar, the general manner in which the accused prepared for and handled his representation of Pinto-Roman established its allegations of misconduct. The Bar claims that the accused "did not review the charging instruments and did not even know the charges and evidence against [Pinto-Roman] or [Gonzalez-Cardona] before seeking a waiver of jury trial." Additionally, the Bar points to the accused's failure to review any police or investigation reports and the accused's failure to conduct his own investigation. As a result, the Bar contends that "[t]here is no way that the accused was or could have been adequately prepared to advise a client about anything or for the client to understand and make knowing and voluntary decisions concerning his case."

In particular, the Bar identifies the accused's February 2, 2004, meeting with Gonzalez-Cardona at the Umatilla County Jail as revealing three examples of the accused's incompetence. First, the accused did not immediately comprehend that he was meeting with Gonzales-Cardona as opposed to Pinto-Roman. Second, if the accused

had been properly prepared, he would have noticed the identity mistake during that meeting or at some point during the subsequent proceedings. Third, the accused advised Gonzalez-Cardona, who the accused believed to be Pinto-Roman, to sign the "Election to Waive Trial by Jury" form without first conducting discovery, further research, or factual investigation.

In response, the accused argues that, because the jail presented Gonzalez-Cardona for the meeting with the accused instead of Pinto-Roman whom the accused had requested, the jail was responsible for the subsequent confusion and that neither Gonzalez-Cardona nor Pinto-Roman had suffered any prejudice due to the mistaken identity.

The problem here is not, however, that the accused spoke to the wrong person. The problem, instead, lies with the accused's failure to devote the minimal amount of effort to the case that must be associated with advice to a client to waive a fundamental constitutional right. Thus, we would view the case no differently if the accused never had been involved in the identity mistake.

The record and the testimony before the trial panel corroborate the Bar's version of events. Even the accused's testimony evidences complete ignorance of the factual or legal issues that might have been germane to either the Gonzalez-Cardona or the Pinto-Roman case at the time that he mistakenly had Gonzalez-Cardona sign the jury waiver in the Pinto-Roman case.

Based on our review of the record, we conclude that, under the circumstances, the accused's omissions demonstrate that the accused's representation of Pinto-Roman fell below the competence standard required by DR 6-101(A). Pinto-Roman was charged with serious crimes, for which he could have received a lengthy prison term.[4] Other than the death penalty, a prison sentence is the most serious deprivation of liberty that a human being in our society can suffer. Accordingly, a lawyer defending a client in that circumstance ethically is obligated to fully acquaint himself or herself with the legal and factual issues of the case as soon as possible.

---

[4] Assault in the second degree, ORS 163.175, is a Class B felony.

At the time that the accused sought Pinto-Roman's jury trial waiver, he had not reviewed any discovery from the prosecutor, and he had conducted no factual or legal investigation on his own. In other words, the accused sought his client's waiver of a fundamental constitutional right without any basis to conclude that such a waiver was in the client's best interest.

We agree that, as the accused asserts here, a lawyer, over time, may conclude that certain cases (such as those involving allegations of sex abuse) are better tried before a judge than a jury. However, no manner of experience or intuition permits a lawyer to seek his or her client's waiver of a fundamental right without first understanding the legal and factual issues in a case. Only then is a lawyer prepared to exercise the professional skill and judgment necessary to advise and assist a client in making an important tactical choice such as the waiver of a constitutional right.

The accused's failure to gain any understanding of the legal or factual issues in the case before seeking Pinto-Roman's jury trial waiver reflects an absence or suspension of professional skill and judgment. Under the circumstances in this case, we conclude that the accused's representation fell below the standard of competence mandated by DR 6-101(A).

■ Having found that the accused violated a disciplinary rule, we turn to the issue of the appropriate sanction. Following our well-established methodology, we first refer to the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (amended 1992) (ABA Standards), to make a preliminary determination of the appropriate sanction, by considering the duty or duties that the accused violated, his mental state at the time of his misconduct, and the injury that his misconduct caused. ABA Standard 3.0. We then consider the existence of any aggravating or mitigating circumstances and consider this court's relevant case law. *See In re Kluge*, 335 Or 326, 348, 66 P3d 492 (2003) (setting out methodology).

In this case, we conclude that the accused knowingly violated his duties to his client, Pinto-Roman, and to the profession when he failed to prepare properly in his representation of Pinto-Roman. That violation—seeking the waiver of a

fundamental constitutional right without first determining whether it was in his client's best interest to do so—was, without doubt, harmful to the client and the legal system.

Taking into account the duties violated, the accused's mental state, and the actual and potential harm, we are persuaded that ABA Standard 7.2, which suggests that a suspension is appropriate, is applicable here.[5] Additionally, the accused has a prior disciplinary record and has substantial experience in the practice of law, which are aggravating factors to be considered in determining the appropriate sanction. ABA Standard 9.22(a). In 1994, the State Professional Responsibility Board (board) admonished the accused for violation of DR 5-101(A) (lawyer self-interest conflict). In 1997, the board admonished the accused for violation of DR 6-101(B) (neglect of a legal matter) for failing to adequately communicate with his client. Finally, in 1998, the accused was reprimanded for violation of DR 9-101(C)(3) (failure to account for client funds).

■     It is inaccurate to characterize a letter of admonition "as a form of 'sanction' or as part of a 'prior record' of discipline imposed upon an accused lawyer." *In re Cohen*, 330 Or 489, 500, 8 P3d 953 (2000). Nonetheless, a letter of admonition "can be relevant to the determination of the appropriate sanction in a subsequent proceeding for other misconduct, because it demonstrates that the accused lawyer has engaged in misconduct in the past." *Id.* Finally, we will take particular note of a letter of admonition if it involved the same or similar type of misconduct. *See id.* ("[W]e conclude that a letter of admonition should be considered under ABA Standard 9.22(a), as evidence of past misconduct, if the misconduct that gave rise to that letter was of the same or similar type as the misconduct at issue in the case at bar."). Accordingly, we will consider the accused's substantial experience in the practice of law, as well as the entirety of the accused's disciplinary record, with the exception of the 1994 letter of admonition, as aggravating circumstances.

---

[5] ABA Standard 7.2 provides:

"Suspension is generally appropriate when a lawyer engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

We now turn to a consideration of this court's case law. Although no cases are precisely on point, two cases provide some guidance in our determination of the appropriate sanction.

In *In re Roberts*, 335 Or 476, 71 P3d 71 (2003), this court suspended an accused lawyer for 60 days after concluding that he had violated both DR 1-102(A)(4) and DR 6-101(A). That case involved a lawyer who, in the course of representing the conservator of an estate, failed to comply with applicable procedural and substantive rules, failed to handle substantive issues, and failed to give the requisite attention to the case. That lawyer also had substantial experience in the practice of law and had no prior record of discipline.

In *In re Gresham*, 318 Or 162, 864 P2d 360 (1993), the accused lawyer had lacked the knowledge and skill necessary to undertake a probate case but proceeded to attempt the representation of such a case. He also was inexperienced in the practice of law and had no prior record of discipline. Several aggravating factors were also present. This court suspended that lawyer for 91 days after concluding that he had violated DR 6-101(A) and (B) and DR 1-102(A)(4).

In this case, as in *Roberts* and *Gresham*, the applicable aggravating factors and the accused's failure to exercise professional skill and judgment in seeking the client's waiver of a fundamental constitutional right justify a suspension from the practice of law. We conclude that the appropriate sanction under the circumstances present here is 30 days.

The accused is suspended from the practice of law for 30 days, commencing 60 days from the effective date of this decision.