Submitted on the record November 7, 2002, accused is suspended from the practice of law for two years April 10, 2003

# In re Complaint as to the Conduct of

## DAVID R. KLUGE,
*Accused.*

## (OSB 98-23; SC S49334)

66 P3d 492

327-a

David R. Kluge, Portland, filed the briefs for himself.

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, filed the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.*

PER CURIAM

---

* Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that David R. Kluge (the accused) violated Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(3) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1-102(A)(4) (conduct prejudicial to administration of justice); DR 1-103(C) (noncooperation with disciplinary investigation); DR 5-101(A) (conflict of interest with lawyer's self-interest); DR 5-102(C) (lawyer as witness other than in behalf of own client); DR 7-110(B) (contact with officials in adversary proceeding); and ORS 9.460(2) (lawyer shall employ only truthful means and not mislead court). A trial panel of the Disciplinary Board concluded that the accused had committed the alleged violations and "recommended"[1] that he be suspended from the practice of law for five years, with that suspension period to run consecutively to the accused's present three-year suspension. *See In re Kluge*, 332 Or 251, 27 P3d 102 (2001) (*Kluge I*) (suspending accused for three years, effective 60 days from June 28, 2001).

Our review is automatic, ORS 9.536(2); BR 10.1, and *de novo*, ORS 9.536(3); BR 10.6. The Bar has the burden of establishing the alleged misconduct by clear and convincing evidence. BR 5.2. Clear and convincing evidence establishes that the truth of the facts asserted is highly probable. *In re Cohen*, 316 Or 657, 659, 853 P2d 286 (1993). Because the accused did not appear for oral argument in this court and the Bar waived oral argument, we have considered this matter on the record before the trial panel and on the briefs filed with this court.

On review, the accused argues that this court should invalidate the decision of the trial panel and dismiss all the charges against him upon the grounds that the Disciplinary Board denied him a fair disciplinary proceeding and that the Bar has failed to establish the alleged violations by clear and convincing evidence. The Bar responds that this court should

---

[1] In this context, the trial panel of the Disciplinary Board is the equivalent of a trial court and, as such, makes decisions, rather than recommendations. *In re Griffith*, 304 Or 575, 577 n 1, 748 P2d 86 (1987).

uphold the decision of the trial panel and, at a minimum, impose its stated sanction.

For the reasons set out below, we conclude that the Disciplinary Board afforded the accused a fair disciplinary proceeding. We also conclude that the accused is guilty of each of the alleged violations and that, for those violations, the appropriate sanction is a two-year suspension from the practice of law. That period of suspension is to run consecutively to the accused's present three-year suspension.

## I. FACTS

We find that the Bar has established the following facts by clear and convincing evidence.[2] The accused was admitted to the Bar in 1978. In 1995, the accused worked both as the general manager and as legal counsel for "Tel-Ad," a group of several corporate entities.[3] As Tel-Ad's general manager, the accused directly supervised an employee named Fischer. Because Fischer is deaf, Tel-Ad occasionally had provided him with a sign language interpreter for work-related matters.

In March 1995, Tel-Ad decided that it no longer would pay for Fischer's interpreter service. Shortly after the accused informed Fischer of that decision, Fischer's employment at Tel-Ad ended.

Subsequently, Fischer filed an action against Tel-Ad in federal district court, alleging that Tel-Ad had violated state and federal employment discrimination laws by discontinuing his interpreter service and by wrongfully terminating his employment. In support of his wrongful termination claim, Fischer alleged that the accused had threatened to fire

---

[2] The trial panel deemed a number of the following facts to be admitted by the accused as the result of a discovery sanction under BR 4.5(e), in which the trial panel chairperson deemed each of the Bar's requests for admissions to be admitted by the accused. On review, the accused argues that the chairperson erred in imposing that discovery sanction and points to that sanction as evidence of the chairperson's bias against him. We have reviewed that sanction and find no evidence of bias. In addition, because we find that the Bar proved the truth of the facts set out in each request for admission by clear and convincing evidence, we decline to address whether the trial panel chairperson erred in imposing that discovery sanction.

[3] Both the Bar and the accused refer to the accused's employer as "Tel-Ad." For convenience, we also refer to the accused's employer as "Tel-Ad."

him if he pursued an employment discrimination claim against Tel-Ad. Fischer also alleged that, after he had informed the accused that he planned to pursue a discrimination claim, Tel-Ad had terminated his employment.

The accused represented Tel-Ad in the Fischer employment discrimination litigation. In July 1996, Fischer's lawyer notified the accused that she planned to call him as a witness. Fischer's lawyer also objected to the accused's representation of Tel-Ad during a subsequent case conference before United States Magistrate Judge Jelderks. Judge Jelderks, however, declined to consider the issue until after he had ruled upon a summary judgment motion that Tel-Ad had filed in the case. Shortly thereafter, Judge Jelderks granted Tel-Ad's summary judgment motion and dismissed the complaint, both for lack of jurisdiction over the federal law claims and because he declined supplemental jurisdiction over the remaining state law claims.

Fischer then filed an action in Multnomah County Circuit Court, reasserting his state law claims. In January 1997, Fischer also filed a motion in that court to disqualify the accused from representing Tel-Ad in the matter upon the ground that his representation violated DR 5-102(A) and (C). Judge Johnson heard oral argument on that motion, but postponed her ruling, because she determined that, in light of the exceptions contained in the rules, it was not yet apparent whether the accused's representation of Tel-Ad was prohibited.

In April 1997, Judge Pro Tem Fisher heard oral argument on a summary judgment motion that Tel-Ad had filed in the Fischer state court litigation. At the conclusion of that oral argument, Judge Fisher *sua sponte* raised her concern that, because the dispute involved him directly, the accused had a conflict of interest in representing Tel-Ad in that litigation. Because of that concern, Judge Fisher recommended that Fischer's lawyer renew the motion to disqualify the accused to Judge Johnson. Judge Fisher also denied Tel-Ad's summary judgment motion.

The accused subsequently filed a second summary judgment motion in Tel-Ad's behalf. The day after he filed that motion, the accused presented a motion *ex parte* to Judge Pro Tem Overgaard to disqualify Judge Fisher from

hearing his summary judgment motion upon the ground that Judge Fisher was biased against him. The accused did not notify Judge Fisher or opposing counsel of his motion to disqualify Judge Fisher. The accused also did not inform Judge Overgaard that Judge Fisher already had ruled upon a substantive matter in the litigation. Judge Overgaard granted the accused's motion.

A month after the accused had obtained the order disqualifying Judge Fisher, Fischer's lawyer learned of that order and filed a motion to set it aside. In June 1997, Judge Johnson set aside the order disqualifying Judge Fisher and entered an order disqualifying the accused from further representing Tel-Ad in the case. At no point before his disqualification did the accused inform Tel-Ad that he had, or potentially could have, a conflict of interest in the Fischer case.

In December 1997, after receiving a complaint from Judge Fisher, the Bar contacted the accused by letter to investigate his conduct in the Fischer litigation. The accused timely answered that letter, and, shortly thereafter, the Bar referred the matter to the Washington/Yamhill County Local Professional Responsibility Committee (LPRC). In February 1998, the accused met in person and cooperated with the investigating lawyer from the LPRC. In May 1998, the investigating lawyer again contacted the accused, but the accused refused a second interview and filed ethics complaints against the investigating lawyer and two other lawyers from the LPRC.[4]

The LPRC reassigned the investigation, and, in January 1999, the new investigating lawyer requested to interview the accused about the Fischer matter. The accused refused that interview and informed the investigating lawyer that he believed that the investigation was closed. In response, the investigating lawyer informed the accused by letter that the investigation was still active and, again, requested an interview. The accused did not respond to that letter and filed ethics complaints against the new investigating lawyer and other lawyers involved in the matter.[5]

---

[4] The Bar later processed and dismissed the accused's ethics complaints against those lawyers under BR 2.5(i)(1).

[5] The Bar also later processed and dismissed the accused's ethics complaints against those lawyers under BR 2.5(i)(1).

In January 2000, the Bar filed a formal complaint against the accused for his conduct in the Fischer litigation. After extensive prehearing motions and discovery, the trial panel held a two-day disciplinary hearing that started in April 2001 and finished in October of that year. In February 2002, the trial panel issued its decision. As noted, the trial panel concluded that the accused had committed each of the alleged violations and suspended the accused from the practice of law for five years.

## II. THE ACCUSED'S CLAIMS

■ Before turning to the charges against the accused, we address the accused's argument that the Disciplinary Board denied him a fair disciplinary proceeding. The accused first contends that this court must invalidate the trial panel's decision because the assigned regional chairperson erroneously denied the accused's peremptory challenge to the trial panel chairperson under BR 2.4(g).[6] As explained below, because we determine that the accused waived that peremptory challenge, we reject the accused's argument.

In March 2000, after the assigned regional chairperson notified the accused and the Bar of the trial panel appointment, the accused timely submitted to her 27 six-page letters, in which he asserted various challenges for cause against each of the selected trial panel members. Except for the first paragraph of each of those letters, which the accused altered to reflect his different challenges for cause, all 27 letters appeared identical. One letter, however, differed from the others by a single sentence inserted in the middle of that letter. In that sentence, the accused asserted that, if his challenges for cause against the trial

---

[6] BR 2.4(g) provides, in part:

"The Bar and an accused * * * shall be entitled to one peremptory challenge and an unlimited number of challenges for cause as may arise under the Code of Judicial Conduct or these rules. Any such challenge shall be filed in writing within seven days of written notice of an appointment of a trial panel with the regional chairperson for disciplinary proceedings and the state chairperson for contested admission and reinstatement proceedings or for cases involving challenges to a regional chairperson. Challenges for cause shall state the reason for the challenge. The regional chairperson or the state chairperson, as the case may be, shall notify Disciplinary Counsel, Bar Counsel and the accused or applicant in writing of all rulings on challenges."

panel chairperson were denied, then he exercised his peremptory challenge against the trial panel chairperson.

In May 2000, the assigned regional chairperson denied all the accused's challenges to the selected trial panel members. Shortly thereafter, the accused filed motions with the state chairperson to disqualify both the assigned regional chairperson and the entire trial panel upon the grounds that the regional chairperson was biased against him and that she erroneously had denied his challenges to the selected trial panel members. The accused, however, did not assert in either of those motions that the assigned regional chairperson had denied a peremptory challenge to the trial panel chairperson.[7]

From June 2000 until the conclusion of the disciplinary hearing in October 2002, the accused submitted and received rulings upon numerous motions to the trial panel chairperson. Before the disciplinary hearing, the accused also personally appeared before the trial panel chairperson at a hearing respecting a discovery matter. Not until the second day of the disciplinary hearing in October 2002, however, did the accused argue specifically that the assigned regional chairperson erroneously had denied a peremptory challenge to the trial panel chairperson.[8]

■ Based upon the foregoing discussion of the record, we conclude that the accused waived his peremptory challenge to the trial panel chairperson. This court previously has explained that "a motion that is never called to the attention of the court is presumed to have been waived by the party." *Harju v. Anderson*, 111 Or 414, 417-18, 225 P 1100 (1924).

---

[7] In September 2000, the accused also sent a letter to the state chairperson in which he asked the state chairperson to disqualify the trial panel chairperson. In that letter, however, the accused again did not argue specifically that the assigned regional chairperson erroneously had denied a peremptory challenge to the trial panel chairperson.

[8] The trial panel chairperson did not permit the accused to make that argument at the disciplinary hearing, ruling that it was untimely. The accused also argued specifically that the assigned regional chairperson erroneously had denied a peremptory challenge to the trial panel chairperson in a motion to disqualify the trial panel that he filed after the conclusion of the disciplinary hearing, but the trial panel chairperson did not rule upon that motion.

That rule applies equally in the context of a disciplinary proceeding. Here, although the accused submitted his peremptory challenge in writing within seven days of the notification of the appointment of the trial panel, as BR 2.4(g) requires, the accused inserted that challenge into the middle of 162 pages of correspondence to the assigned regional chairperson. After the assigned regional chairperson denied all his challenges, the accused then waited until the second day of the disciplinary hearing, at which time the trial panel chairperson already had presided over the disciplinary proceeding for more than two years, before he argued specifically that the regional chairperson erroneously had denied a peremptory challenge. The accused may not wait until after the trial panel chairperson has ruled upon motions, and the disciplinary hearing is near conclusion, and then argue that the regional chairperson erroneously denied a peremptory challenge to the trial panel chairperson. Such conduct is inconsistent with the accused's initial assertion of a peremptory challenge to the trial panel chairperson and constitutes a waiver of that challenge. We therefore conclude that the denial of the accused's peremptory challenge does not require this court to invalidate the trial panel's decision.

The accused next contends that the Disciplinary Board denied him a fair disciplinary hearing because the trial panel chairperson displayed bias against him throughout the proceeding. We have reviewed the entire record of the disciplinary proceeding, including the prehearing motions, and find no evidence of bias. Therefore, we also reject the accused's argument that this court must invalidate the trial panel decision because of bias against him.

## III. ALLEGED VIOLATIONS

Having concluded that the Disciplinary Board did not deny the accused a fair disciplinary hearing, we turn to the merits of the charges against the accused.

### A. *First Cause of Complaint*

The first cause of complaint alleges that the accused violated DR 5-101(A) and DR 5-102(C) by representing Tel-Ad in the Fischer employment discrimination litigation

when that dispute was based, in part, upon the accused's actions as Fischer's supervisor at Tel-Ad.

## 1. *DR 5-101(A)*

DR 5-101(A) provides, in part:

"Except with the consent of the lawyer's client after full disclosure, * * * a lawyer shall not accept or continue employment if the exercise of the lawyer's professional judgment on behalf of the lawyer's client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests."

DR 10-101(B)(1) and (2) define "full disclosure" in the context of DR 5-101(A) as:

"[A]n explanation sufficient to apprise the recipient of the potential adverse impact on the recipient, of the matter to which the recipient is asked to consent * * * [including] a recommendation that the recipient seek independent legal advice to determine if consent should be given and shall be contemporaneously confirmed in writing."

As this court previously has explained, the disciplinary rules governing conflicts of interest are based upon the concern that, when a lawyer undertakes the representation of a client with interests differing from the interests of the lawyer or the lawyer's other clients, the lawyer's judgment might become impaired or the lawyer's loyalty might become divided. *See In re O'Neal*, 297 Or 258, 264, 683 P2d 1352 (1984) (discussing ethical principles underlying disciplinary rules respecting conflicts of interest). To establish a violation of DR 5-101(A), the Bar need not prove that the lawyer's judgment actually was impaired, but, instead, must show only that the lawyer had an interest that reasonably might have affected the lawyer's professional judgment. *In re Wolf*, 312 Or 655, 661, 826 P2d 628 (1992). Although a lawyer never may represent multiple clients who have actually conflicting interests, *In re Johnson*, 300 Or 52, 58-59, 707 P2d 573 (1985), under DR 5-101(A), a lawyer may represent a client even when the lawyer's interests may or will affect the lawyer's professional judgment, so long as the lawyer has obtained the consent of the client after making full disclosure under DR 10-101(B)(1) and (2).

■ By representing Tel-Ad in a matter that involved him directly, we find that the accused created the risk of impaired judgment and divided loyalty that implicates DR 5-101(A). Because Fischer's claim against Tel-Ad rested in large part upon allegations of wrongdoing by the accused in Tel-Ad's behalf, that claim placed the legality of the accused's own actions directly at issue. As an alleged wrongdoer in the action, the accused had a strong interest in defending the propriety of his conduct to protect his professional reputation. Additionally, although, as the accused emphasizes, Fischer did not name the accused in his action against Tel-Ad, the accused nevertheless also had a personal and financial interest in avoiding any personal liability to Fischer for his actions as Fischer's supervisor. *See* ORS 659A.030(1)(g) ("It is an unlawful employment practice * * * [f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden in this chapter or to attempt to do so.").

Although we do not determine whether the accused's interests had an actual effect upon his representation of Tel-Ad, we conclude that those interests reasonably might have affected his professional judgment. Because the accused had a stake in defending the propriety of his actions, the accused's ability to provide detached advice to Tel-Ad about the potential merits of Fischer's claims or about Tel-Ad's potential defenses reasonably might have been impaired. In addition, the accused's interests also reasonably might have compromised his ability to advise Tel-Ad about litigation strategy in the case, including the possible benefit to Tel-Ad in separating itself from the accused.

Although he insists that Tel-Ad consented to his representation, the accused does not dispute that he did not make full disclosure to Tel-Ad under DR 10-101(B)(1) and (2), as DR 5-101(A) requires. *See In re Altstatt*, 321 Or 324, 330, 897 P2d 1164 (1995) (requirements of full disclosure set out in DR 10-101(B)(1) and (2) must be followed for valid consent); *see also In re Brandt / Griffin*, 331 Or 113, 137, 10 P3d 906 (2000) (explaining requirements of full disclosure under DR 10-101(B)). Because we determine that the accused was required to and did not obtain the consent of Tel-Ad after making full disclosure under DR 10-101(B)(1) and (2), we

conclude that the Bar has established by clear and convincing evidence that the accused violated DR 5-101(A) as alleged in the first cause of complaint.

### 2. *DR 5-102(C)*

■■ We turn to the second allegation in the first cause of complaint, that is, that the accused violated DR 5-102(C) when he represented Tel-Ad in the Fischer dispute. DR 5-102(C) provides, in part:

> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer * * * may be called as a witness other than on behalf of the lawyer's client, the lawyer may continue the representation until it is apparent that the lawyer's * * * testimony is or may be prejudicial to the lawyer's client."

The prohibition against a lawyer acting as counsel in a case in which the lawyer also will be called as a witness is a basic rule of legal ethics. *In re Kinsey*, 294 Or 544, 568 n 12, 660 P2d 660 (1983). To prevent parties from abusing that rule as a means to disqualify or force the withdrawal of opposing counsel, DR 5-102(C) mandates the withdrawal of a lawyer who will be called as a witness by opposing counsel only when it is apparent that the lawyer's testimony will be actually or potentially prejudicial to the lawyer's client. *See* ABA Annotated Model Rules of Professional Conduct at 365 (4th ed 1999) (disqualification motions subject to potential abuse as litigation tactic). Once it is apparent that the lawyer's testimony will be actually or potentially prejudicial to the lawyer's client, however, DR 5-102(C) does not permit the lawyer to continue the representation by obtaining the consent of the client after full disclosure.

We determine that, from the outset of the case, the accused learned and it was obvious that he would be called as a witness in Fischer's case against Tel-Ad. As Fischer's direct supervisor, the accused represented Tel-Ad in negotiating Fischer's employment terms and played a central role in the events leading to Fischer's action against Tel-Ad. In his complaint against Tel-Ad, Fischer confirmed that the accused likely would be a material witness in the case because he alleged specific acts of wrongdoing by the accused in Tel-Ad's behalf to support his claim. Fischer's lawyer also repeatedly

notified the accused that the accused would be called as a witness, and she introduced the accused's written notes and recorded teletypewriter (TTY) conversation between Fischer and the accused as evidence in the case.

We also determine that, from the outset of the case, it was apparent that the accused's testimony in Fischer's behalf would have been at least potentially prejudicial to Tel-Ad. As a principal actor in the events underlying Fischer's claim against Tel-Ad, the accused would have been called to testify as to the decision to terminate Fischer's interpreter service and the circumstances under which Fischer's employment at Tel-Ad ended. The facts surrounding those events were both disputed and material to Fischer's claim. Further, because Fischer alleged specific acts of wrongdoing by the accused in Tel-Ad's behalf, and because the accused consistently has maintained that Tel-Ad approved of his actions, it is likely that the accused's testimony would have been adverse to Tel-Ad.

Nevertheless, the accused contends that he could not have violated DR 5-102(C) because he never perceived his testimony as potentially prejudicial to Tel-Ad, and, according to the accused, DR 5-102(C) requires a showing that it was apparent *to the lawyer* that the lawyer's testimony might be prejudicial—in other words, that the accused lawyer acted with a knowing mental state. We disagree.

■ As this court noted in *Kluge I*, on its face, DR 5-102(C) contains no explicit requirement of a particular mental state. 332 Or at 262 n 4. This court's case law also has not addressed whether the showing of a particular mental state is necessary to establish a violation of DR 5-102(C). In considering that question here, however, we are mindful that the inherent conflict of a lawyer simultaneously acting as an advocate for and as a witness against a client exists regardless of whether the lawyer actually perceives or unreasonably disregards that circumstance. In light of that fact, we conclude that, to establish that it was "apparent" that the lawyer's testimony might be prejudicial under DR 5-102(C), the Bar need show only that a reasonable person would have recognized that fact without difficulty. Thus, although the

accused's mental state is relevant in assessing the appropriate sanction for his misconduct, *In re Eadie*, 333 Or 42, 64-65, 36 P3d 468 (2001), it is immaterial to our determination whether the accused violated DR 5-102(C).

■ The accused also argues that, until his disqualification, he was entitled to rely upon Judge Johnson's initial determination that his representation did not violate DR 5-102(C). Again, we disagree. Even assuming that Judge Johnson fully understood the accused's role in the Fischer case, the accused may not rely as a matter of defense upon Judge Johnson's determination that his representation of Tel-Ad did not violate DR 5-102(C). *See Kidney Association of Oregon v. Fergusen*, 315 Or 135, 143, 843 P2d 442 (1992) (lower courts do not have jurisdiction to determine or sanction disciplinary rule violations); *cf. In re Ainsworth*, 289 Or 479, 490, 614 P2d 1127 (1980) (favorable advice by Bar's general counsel is not defense to disciplinary violations). Accordingly, we conclude that the Bar has established by clear and convincing evidence that the accused violated DR 5-102(C) as alleged in the first cause of complaint.

B. *Second Cause of Complaint*

The second cause of complaint alleges that the accused violated DR 1-102(A)(3) by obtaining an order to disqualify Judge Fisher without notifying Judge Fisher or opposing counsel, and without informing Judge Overgaard that Judge Fisher already had ruled against him upon a matter in the case.[9] DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

_____

[9] The second cause of complaint also alleges that the accused violated ORS 9.460(2), which provides that a lawyer shall "[e]mploy, for the purpose of maintaining the causes confided to the attorney, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact[.]" Because we conclude that, for the reasons set out in the text below, the accused's conduct violated DR 1-102(A)(3), and a decision respecting the accused's conduct also as to ORS 9.460(2) would not alter the nature or extent of the sanction in this proceeding, we decline to address that charge. *See In re Davenport*, 334 Or 298, 313, 49 P3d 91 (2002) (declining to address charge of ORS 9.460(2), because finding as to that charge would not alter nature or extent of sanction).

Although the Bar's complaint does not specify which of the four theories embodied in DR 1-102(A)(3) that it relies upon in this proceeding, the Bar argued only the theories of dishonesty and misrepresentation in its brief before this court. Accordingly, we consider the Bar's allegation that the accused violated DR 1-102(A)(3) only under those theories. *See In re Davenport*, 334 Or 298, 307-08 n 8, 49 P3d 91 (2002) (better practice for Bar to identify theory or theories under DR 1-102(A)(3) and confining analysis to theory argued before this court).

 Under DR 1-102(A)(3), dishonesty is conduct evidencing a disposition to lie, cheat, or defraud, as well as a lack of trustworthiness or integrity. *In re Claussen*, 331 Or 252, 260, 14 P3d 586 (2000). A misrepresentation under DR 1-102(A)(3) is either an affirmative misstatement or an omission that is knowing, false, and material. *Kluge I*, 332 Or at 255. A misrepresentation is material if it concerns "information that would or could significantly influence the hearer's decision-making process." *Id.* An accused lawyer makes a knowing misrepresentation when the accused has the material information in mind and is conscious of its materiality. *In re Gustafson*, 327 Or 636, 648, 968 P2d 367 (1998).

 The Bar first argues that, in presenting his judicial disqualification motion to Judge Overgaard, the accused made a material misrepresentation, both by omission and affirmatively, as to the timeliness of his motion. The accused denies that he misrepresented any facts and contends that his nondisclosure of Judge Fisher's previous ruling was neither material nor knowing.

ORS 14.210 to 14.275 govern motions to disqualify a judge. ORS 14.210 and ORS 14.250 provide causes for judicial disqualification, and ORS 14.260[10] and ORS

---

[10] ORS 14.260 provides, in part:

"(2) The affidavit [supporting a motion for change of judge] shall be filed with such motion at any time prior to final determination of such cause, matter or proceedings in uncontested cases, and in contested cases before or within five days after such cause, matter or proceeding is at issue upon a question of fact or within 10 days after the assignment, appointment and qualification or election and assumption of office of another judge to preside over such cause, matter or proceeding.

"(3) No motion to disqualify a judge shall be made after the judge has ruled upon any petition, demurrer or motion other than a motion to extend

14.270[11] set out the procedure for change of judge in a circuit court. Under ORS 1.645(4), judges pro tem appointed to the circuit court are expressly subject to the causes for judicial disqualification provided in ORS 14.210 and ORS 14.250.

Because Fischer filed his action in Multnomah County, ORS 14.270 dictated the proper time and manner for a motion to disqualify a judge in that case. *See* ORS 14.260(4) (ORS 14.270 applies in judicial districts with populations of 100,000 or more). Under ORS 14.270, the accused's judicial disqualification motion was untimely, because the accused presented that motion weeks after Judge Fisher had ruled upon his first summary judgment motion. *See* ORS 14.270 (judicial disqualification motion must be at time of case assignment to judge and may not be made after judge has ruled upon a motion). Because we presume that Judge Overgaard would not have granted the accused's motion had she known that fact, and Judge Overgaard so testified, there is no doubt that the timeliness of the accused's motion was a material fact. Further, if the accused knew that his motion was untimely, he clearly had a duty to disclose that fact to Judge Overgaard. The issue here, then, is whether the accused knew that his motion was untimely when he filed it.

In his disqualification motion, the accused specifically cited ORS 14.250 and ORS 14.260. Because he complied with the pleading requirements set out in ORS 14.260, the

_____

time in the cause, matter or proceeding. No motion to disqualify a judge or a judge pro tem, assigned by the Chief Justice of the Supreme Court to serve in a county other than the county in which the judge or judge pro tem resides shall be filed more than five days after the party or attorney appearing in the cause receives notice of the assignment.

"(4) In judicial districts having a population of 100,000 or more, the affidavit and motion for change of judge shall be made at the time and manner prescribed in ORS 14.270."

[11] ORS 14.270 provides, in part:

"An affidavit and motion for change of judge to hear the motions and demurrers or to try the case shall be made at the time of the assignment of the case to a judge for trial or for hearing upon a motion or demurrer. Oral notice of the intention to file the motion and affidavit shall be sufficient compliance with this section providing that the motion and affidavit are filed not later than the close of the next judicial day. No motion to disqualify a judge to whom a case has been assigned for trial shall be made after the judge has ruled upon any petition, demurrer or motion other than a motion to extend time in the cause, matter or proceeding * * *[.]"

accused also appears to have read that provision. In light of the trial panel's finding that the accused was not credible, we are unconvinced by the accused's protestations that he did not disclose Judge Fisher's previous ruling because he had interpreted ORS 14.260(3) to bar only a motion to disqualify a *judge*, and not a motion to disqualify a *judge pro tem*, if that judge already had ruled upon a matter in the case. Further, because Fischer's lawyer testified at the disciplinary hearing that the accused's second summary judgment motion was almost identical to the summary judgment motion that Judge Fisher previously had denied, we also agree with the trial panel's conclusion that the accused did not disclose Judge Fisher's previous ruling because he sought to circumvent that adverse ruling.[12] Based upon those facts, we are persuaded that it was highly probable that the accused had grasped the import of the fact that Judge Fisher had ruled upon a matter in the case weeks before he presented his disqualification motion and that he failed to disclose that fact because he knew that it might affect Judge Overgaard's ruling. Accordingly, we conclude that the Bar has established by clear and convincing evidence that the accused made a misrepresentation in violation of DR 1-102(A)(3) as alleged in the second cause of complaint.[13]

---

[12] The trial panel concluded that the accused's misrepresentation as to the timeliness of his motion was knowing because it found that the accused "was probably familiar" with the rule that a motion to disqualify a judge may not be brought after that judge already has ruled upon a motion in the case. As noted previously, in a lawyer disciplinary proceeding, the Bar has the burden of establishing the alleged misconduct by clear and convincing evidence, that is, evidence establishing that the truth of the facts asserted is highly probable. 335 Or at 328. Because we conclude that the trial panel's finding as to the accused's knowing mental state does not satisfy that standard, we place no weight upon that finding in our determination that the accused's misrepresentation was knowing.

[13] As noted, the Bar also argues that the accused affirmatively misrepresented the timeliness of his disqualification motion because, according to the Bar, he implied in that motion that any hearing before Judge Fisher was yet to take place. The accused's motion stated, in part:

"Defendants hereby move the court under ORS 14.250 and 14.260 for an order recusing Judge pro tem Ann Fisher *from hearing defendants' Motion for Summary Judgment* on the grounds that defendants' counsel believes that neither he nor defendants *can have* a fair and impartial hearing before her."

(Emphasis added.)

Although, as explained in the text above, we conclude that the accused made a material misrepresentation by omission, we disagree with the Bar that the accused also made an affirmative misrepresentation in that motion. By referring to his

The Bar also charges that the accused was dishonest in violation of DR 1-102(A)(3) when he failed to notify either opposing counsel or Judge Fisher of his disqualification motion because, according to the Bar, the accused knowingly elected not to make those disclosures to ensure that his motion would go unopposed. The accused responds that ORCP 9 A did not require him to notify either opposing counsel or Judge Fisher of that motion because a judicial disqualification motion is a motion that may be heard *ex parte*.

Under ORCP 9 A, "[e]xcept as otherwise provided in these rules, * * * every written motion other than one which may be heard ex parte * * * shall be served upon each of the parties." In a judicial disqualification motion, the parties include both the other parties to the case and the judge being moved against in the motion. *See* ORS 14.260(1) (judge moved against in judicial disqualification motion permitted to challenge that motion). Although, as the accused contends, a judicial disqualification motion may be presented without the presence of either of those parties, such a motion is not exempt from the general rule set out in ORCP 9 A that copies of written motions must be served upon each of the parties. *Eadie*, 333 Or at 59.

The question here, however, is not whether the accused should have served his motion upon opposing counsel and Judge Fisher, but, instead, is whether, in failing to do so, the accused acted dishonestly. In other motions that he filed in the Fischer litigation, the accused complied with the requirements of ORCP 9 A by serving those motions upon opposing counsel. In addition, as noted above, the accused specifically cited ORS 14.260 in his disqualification motion, which provides that a judge moved against in a judicial disqualification motion may challenge such a motion. ORS 14.260(1). Based upon those facts, we conclude that the accused was familiar with the requirements of ORCP 9 A and that the accused knowingly elected to disregard those requirements when he failed to serve his motion upon either opposing counsel and Judge Fisher.[14] Because we find that

future summary judgment motion hearing, we find that the accused affirmatively represented only that the hearing as to that motion was yet to take place.

[14] The trial panel concluded that the accused's conduct in failing to serve opposing counsel and Judge Fisher of his disqualification motion violated DR 1-102(A)(3)

such conduct evidences a lack of integrity, we conclude that the Bar has established by clear and convincing evidence that the accused acted dishonestly in violation of DR 1-102(A)(3) as alleged in the second cause of complaint.

## C. *Third Cause of Complaint*

■ The third cause of complaint alleges that the accused violated DR 7-110(B) when he failed to notify opposing counsel or Judge Fisher of his judicial disqualification motion. DR 7-110(B) provides:

> "In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending except:
>
> "(1) In the course of official proceedings in the cause.
>
> "(2) In writing if the lawyer promptly delivers a copy of the writing to opposing counsel or to the adverse party if the adverse party is not represented by a lawyer.
>
> "(3) Orally upon adequate notice to opposing counsel or to the adverse party if the adverse party is not represented by a lawyer.
>
> "(4) As otherwise authorized by law or by Judicial Rule 2 of the Code of Judicial Conduct."

As this court previously has explained, the purpose of DR 7-110(B) is to avoid the appearance or the effect of granting one party an undue advantage. *In re Dugger*, 334 Or 602, 621, 54 P3d 595 (2002).

As noted above, ORCP 9 A required the accused to serve his judicial disqualification motion upon both opposing counsel and Judge Fisher. Although it was not related to the underlying substantive claim, that motion nevertheless was on the merits in Fischer's action against Tel-Ad. *See Eadie*, 333 Or at 59 (motion to disqualify judge is motion "on the merits"). In addition, because Judge Fisher had the right to

___

because it found that the accused "knew or should have known" that he was required to provide such notice. Because we conclude that the trial panel's finding as to the accused's knowledge of the notice requirements of ORCP 9 A does not satisfy the standard of clear and convincing evidence, we again place no weight upon that finding in our determination that the accused knew and disregarded the notice requirements of ORCP 9 A.

challenge the accused's disqualification motion under ORS 14.260(1), that motion also was on the merits as to her in the judicial disqualification proceeding. We conclude that the Bar has established by clear and convincing evidence that the accused violated DR 7-110(B) as alleged in the third cause of complaint.

## D. *Fourth Cause of Complaint*

■ The fourth cause of complaint alleges that the accused's conduct in obtaining Judge Fisher's disqualification order also violated DR 1-102(A)(4). DR 1-102(A)(4) prohibits a lawyer from engaging in "conduct that is prejudicial to the administration of justice[.]"

■ To establish a violation of DR 1-102(A)(4), the Bar must show that (1) the accused lawyer's action or inaction was improper; (2) the accused lawyer's conduct occurred during the course of a judicial proceeding or a proceeding with the trappings of a judicial proceeding; and (3) the accused lawyer's conduct had or could have had a prejudicial effect upon the administration of justice. *In re Haws*, 310 Or 741, 746-48, 801 P2d 818 (1990). The administration of justice includes both the procedural functioning of the proceeding and the substantive interests of parties to the proceeding. *Id.* at 747. Prejudice may arise from several acts that cause some harm or a single act that causes substantial harm to the administration of justice. *Id.* at 748.

The Bar contends that, by failing to disclose that his disqualification motion was untimely and by failing to notify opposing counsel or Judge Fisher of that motion, the accused violated DR 1-102(A)(4) because he imposed an unnecessary burden upon both the court system and opposing counsel. The accused responds, based upon his arguments set out above, that he did not violate DR 1-102(A)(4) because his actions were proper.

As explained above, here, the accused knew that his disqualification motion was untimely and that he was required to serve notice of that motion upon opposing counsel and Judge Fisher. Because the accused failed to disclose the untimeliness of his motion and to serve such notice, the accused improperly obtained an order disqualifying Judge

Fisher. Opposing counsel did not learn of that order until she appeared at oral argument for the accused's second summary judgment motion a month later. Opposing counsel then had to prepare a motion to set aside that order, and Judge Johnson was required to conduct a hearing regarding the order. The accused's conduct prejudiced the procedural functioning of the judicial system by imposing a substantial burden upon both opposing counsel and Judge Johnson to undo the accused's actions. *See In re Gresham*, 318 Or 162, 166, 864 P2d 360 (1993) (unnecessary burden upon court prejudicial to administration of justice). In addition, because a judge must be able to rely upon the candor and integrity of a lawyer presenting a matter *ex parte*, the accused's misconduct also prejudiced the procedural functioning of the judicial system by undermining that trust. *See In re Greene*, 290 Or 291, 297-98, 620 P2d 1379 (1980) (judges must be able to rely upon integrity of lawyer presenting matter *ex parte*). We conclude that the Bar has established by clear and convincing evidence that the accused's conduct violated DR 1-102(A)(4) as alleged in the fourth cause of complaint.

E. *Fifth Cause of Complaint*

The fifth cause of complaint alleges that the accused's conduct during the Bar's investigation violated DR 1-103(C). That rule provides:

> "A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

The Bar charges that the accused refused to cooperate with the disciplinary investigation and that he further obstructed that investigation by making unfounded accusations against the investigating LPRC members. The accused contends that he responded fully to all reasonable inquiries from the investigators and that, after his contact with the first investigating LPRC member, the Bar failed to provide him with official or clear notice that the investigation was still active. The accused also alleges that the Bar was not authorized to conduct the investigation because it failed to

obtain extensions of time to complete the investigation as required under BR 2.5(f)(2).[15] To that allegation, the Bar responds that the accused has not demonstrated that he was substantially prejudiced by any delay in the investigation.

Although the accused initially responded to and cooperated with the first investigating lawyer from the LPRC, he then refused all subsequent requests for interviews from both lawyers investigating the matter. In addition, contrary to the accused's contention that the Bar did not inform him of the status of the investigation, the second investigating lawyer clearly notified the accused that the investigation was active after the accused advised him of that concern. Despite that clear notification, however, the accused's only response to the investigation was to file ethics complaints against the lawyers involved in the matter. It is clear from those facts that the accused failed to respond to the Bar's reasonable requests.

In addition, we reject the accused's argument that the Bar was not authorized to conduct the investigation because the Bar failed to obtain necessary extensions of time. As this court noted in *Griffith*, 304 Or at 590, under BR 11.1, the Bar's failure to meet any time requirement that the rules of procedure imposes will be grounds for dismissal of a charge only if the accused demonstrates that such delay prejudiced him. We agree with the Bar that the accused has failed to make such a showing in this case. Thus, we conclude that the accused violated DR 1-103(C) as alleged in the fifth cause of complaint.

## IV. SANCTION

In sum, we have concluded that the accused violated DR 5-101(A), DR 5-102(C), DR 1-102(A)(3), DR 7-110(B), DR 1-102(A)(4), and DR 1-103(C). We now turn to the question of the appropriate sanction for those violations.

---

[15] BR 2.5(f)(2) provides:

"The SPRB may grant to an LPRC additional time to investigate a complaint if a request for additional time with the reasons therefor is submitted by the chairperson of the LPRC to Disciplinary Counsel for presentation to the SPRB. Disciplinary Counsel shall notify the attorney and the complainant in writing of the action taken by the SPRB on any such request."

In determining the appropriate sanction for violations of the disciplinary rules, this court first refers to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards). Using the ABA Standards, we make a preliminary determination of the appropriate sanction by considering the duty violated by the accused, the accused's mental state, and the injury caused by the accused's misconduct. ABA Standard 3.0. We then consider the existence of any aggravating or mitigating circumstances that may justify either an increase or a reduction in the degree of sanction to be imposed. ABA Standards 9.2; 9.3. Finally, we evaluate the appropriate sanction in light of this court's case law. *See Eadie*, 333 Or at 64-65 (describing court's methodology for determining appropriate sanction in lawyer discipline cases).

## A. *Preliminary Determination*

### 1. *The Accused's Violations of DR 5-101(A) and DR 5-102(C)*

The accused violated his duty to his client, Tel-Ad, when he continued his representation despite a conflict of interest and when he knew that he would be called as a witness in the Fischer litigation. ABA Standard 4.0. Because we find that the accused was alerted repeatedly to the conflict and to the fact that his testimony would have been at least potentially prejudicial to Tel-Ad, we conclude that the accused's conduct was knowing. *See* ABA Standards at 7 (lawyer's mental state is knowing when lawyer acts with conscious awareness of nature of conduct, but without conscious objective). We also conclude that, by continuing his representation under such circumstances, the accused caused at least potential harm to Tel-Ad. *In re Devers*, 328 Or 230, 242, 974 P2d 191 (1999) (potential injury sufficient, because disciplinary process serves to protect public). Absent other factors, the ABA Standards provide that a suspension is the appropriate sanction for such violations in those circumstances. ABA Standard 4.32.

2. *The Accused's Violations of DR 1-102(A)(3) and (4), and DR 7-110(B)*

The accused violated his duty to the public and the legal system when he engaged in conduct that involved dishonesty and misrepresentation and that was prejudicial to the administration of justice. ABA Standards 5.1; 6.1. The accused also violated his duty to the legal system when he improperly communicated *ex parte* with the court in presenting his judicial disqualification motion. ABA Standard 6.3.

The accused lawyer's mental state is intentional when that lawyer acts with "the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. The Bar argues that, in misrepresenting the timeliness of his judicial disqualification motion and in failing to notify opposing counsel and Judge Fisher of that motion, the accused acted intentionally to ensure that Judge Overgaard would grant his motion. We agree and conclude that the accused's violations of those disciplinary rules were intentional. *See Davenport*, 334 Or at 319 n 17 (determination that accused acted "knowingly" for purposes of particular rule violation does not preclude conclusion that accused acted intentionally for purposes of sanction analysis). We also conclude, as discussed earlier, that the accused's intentional violations of the disciplinary rules caused actual harm to the legal system and to the legal profession. Under the ABA Standards, the appropriate sanction for the accused's misconduct under DR 1-102(A)(3) and (4), and DR 7-110(B), is disbarment. ABA Standards 5.11; 6.11.

3. *The Accused's Violation of DR 1-103(C)*

When the accused did not respond to reasonable requests during the disciplinary investigation, the accused violated his duty owed as a professional. ABA Standard 7.0. In addition, because the disciplinary process serves to protect the public, the accused also violated his duty to the public by engaging in such conduct. ABA Standard 5.0; *see also In re Glass*, 308 Or 297, 305, 779 P2d 612 (1989) (disciplinary process serves to protect public).

In the disciplinary investigation, the Bar made multiple efforts to contact the accused and clearly informed the accused that the investigation was active. As we noted previously, the accused responded to those efforts only by filing multiple ethics complaints against the lawyers who were involved in the investigation, all of which were subsequently investigated and dismissed. Based upon those facts, we conclude that the accused intentionally acted to frustrate the disciplinary process. ABA Standards at 7. Because the disciplinary investigation was unnecessarily extended as a result, we also determine that the accused caused actual injury to the Bar and to the public. The appropriate sanction for such misconduct under the ABA Standards is a suspension. ABA Standard 7.2.

## B. *Aggravating and Mitigating Factors*

In this proceeding, several aggravating factors apply. Based upon his history of prior disciplinary offenses and the multiple offenses at issue in this proceeding, the accused has demonstrated a pattern of misconduct. ABA Standards 9.22(c), (d). The accused also has refused to acknowledge the wrongfulness of his conduct. ABA Standard 9.22(g). In addition, because the accused was admitted to the Bar in 1978, the accused has substantial experience in the practice of law. ABA Standard 9.22(i).

Further, the accused's prior disciplinary offenses also act as an aggravating factor in this proceeding. ABA Standard 9.22(a); *see also In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997) (disciplinary violations adjudicated prior to the imposition of sanction in current case act as aggravating factor). In determining the weight of prior disciplinary offenses as an aggravating factor, this court considers: (1) the relative seriousness of the prior offenses and resulting sanction; (2) the similarity of the prior offenses to the offense at issue in the current case; (3) the number of prior offenses; (4) the relative recency of the prior offenses; and (5) particularly, whether the accused lawyer had been sanctioned for the prior offenses before engaging in the offenses at issue in the current case. *Id.*; *see also In re Huffman*, 331 Or 209, 227, 13 P3d 994 (2000) (timing of current offense in relation to prior offense particularly important factor).

In this case, the accused's prior disciplinary offenses occurred recently and involved some of the same violations that we have concluded that the accused violated in this proceeding. *See Kluge I*, 332 Or at 253 (concluding that accused violated DR 1-102(A)(3) and DR 5-102(C), among other violations). The accused's prior disciplinary offenses also were of a sufficiently serious nature that this court considered disbarment and concluded that a three-year suspension from the practice of law was warranted. *Id.* at 265. However, the fact that the accused was not sanctioned for those offenses before committing the offenses at issue in this proceeding diminishes the weight that we place upon the accused's prior offenses as a aggravating factor. *See Huffman*, 331 Or at 228 (fact that accused lawyer sanctioned for prior misconduct after he committed misconduct at issue in current proceeding diminishes weight of prior offense as aggravating factor).

No mitigating factors apply in this proceeding. Although delay in the disciplinary proceeding can operate as a mitigating factor, that factor does not apply here, because the accused himself substantially contributed to that delay. ABA Standard 9.32(j); *see also Jones*, 326 Or at 201 (delay in disciplinary proceeding can act as mitigating factor when lawyer did not contribute to delay). In addition, although the accused has stressed that his client has not complained about his representation, the absence of complaint from the client is not a mitigating factor. *See* ABA Standard 9.4(f) (failure of injured client to complain is neither aggravating nor mitigating factor).

C. *Oregon Case Law*

Our preliminary determination under the ABA Standards suggests that a suspension or disbarment may be the appropriate sanction for the accused's misconduct. We now consider the appropriate sanction in light of this court's case law.

Depending upon the individual facts and circumstances, this court has imposed a range of sanctions in cases involving misconduct similar to the accused's misconduct here. In cases resulting in lesser sanctions, the court often has considered the presence of significant mitigating factors, particularly cooperation with the disciplinary process. For

example, in *In re Morris*, 326 Or 493, 953 P2d 387 (1998), this court suspended the accused lawyer for 120 days for knowingly representing clients with conflicting interests, for making a knowing misrepresentation by filing a false document, and for knowingly engaging in conduct that was prejudicial to the administration of justice. In that case, however, the court emphasized that the mitigating factors, including the accused lawyer's good reputation and her cooperative attitude toward the disciplinary proceeding, significantly outweighed the applicable aggravating factors. *Id.* at 505. Similarly, in *In re Claussen*, 322 Or 466, 909 P2d 862 (1996), this court imposed a one-year suspension when the accused lawyer intentionally had represented clients with conflicting interests, had made intentional misrepresentations to bankruptcy court, and had engaged in intentional conduct that was prejudicial to the administration of justice. As in *Morris*, the court considered several mitigating factors, including cooperation with the disciplinary proceeding, in determining the appropriate sanction for the accused lawyer's misconduct. *Id.* at 486.

In cases in which the aggravating factors significantly outweighed any mitigating factors, this court has imposed significantly more serious sanctions for similar misconduct. For example, in *Kluge I*, 332 Or 251, this court concluded that a three-year suspension was warranted when the accused made intentional misrepresentations about his status as a public notary and about his engagement in the private practice of law, intentionally failed to withdraw from representing his client after it was apparent that his testimony would be prejudicial to his client, and intentionally practiced law without professional liability insurance. In determining the appropriate sanction, the court stressed that the multiple aggravating factors significantly outweighed the one mitigating factor (no prior disciplinary record). *Id.* at 264. Similarly, in *Eadie*, 333 Or 42, this court suspended the accused lawyer for three years for a negligent *ex parte* communication with a judge, for intentional misrepresentations to the court and the opposing party, and for intentional conduct that was prejudicial to the administration of justice, in addition to other violations. In that case, the court determined that several aggravating factors applied, but that the

accused lawyer's cooperation with the disciplinary proceeding acted as the sole mitigating factor. *Id.* at 69-70. Finally, in *Huffman*, 331 Or 209, this court concluded that a two-year suspension was warranted when the accused lawyer intentionally misrepresented his ability to pay appellate filing fees and intentionally failed to cooperate with the disciplinary investigation. In that case, this court determined that no mitigating factors, but numerous aggravating factors applied, including a prior disciplinary record. *Id.* at 227-28. However, because the accused lawyer had not been sanctioned for his earlier misconduct prior to committing the misconduct at issue in that case, the court gave that aggravating factor only "some, but not substantial, weight * * *[.]" *Id.* at 228. *See also In re Wyllie*, 327 Or 175, 957 P2d 1222 (1998) (two-year suspension for intentional misrepresentation regarding compliance with continuing legal education requirements and intentional frustration of disciplinary process, with no mitigating factors and multiple aggravating factors, but diminishing weight given to prior disciplinary record as aggravating factor because accused lawyer had not been sanctioned for prior misconduct at time of misconduct at issue in that case).

D. *Appropriate Sanction*

In light of the serious nature of the additional disciplinary violations at issue in *Kluge I* and *Eadie*, the accused's misconduct in this case is less serious than the misconduct involved in those cases. However, the accused's misconduct is substantially more serious than the misconduct at issue in *Morris* and *Claussen*, due to the accused's intentional failure to cooperate with the disciplinary proceeding, the presence of multiple aggravating factors, and the lack of any mitigating factors. On balance, although the accused here also is guilty of knowing violations of the disciplinary rules involving conflicts of interest, we find the facts and circumstances of this case to be most analogous to *Huffman* and *Wyllie*. As in those cases, the accused's violations of DR 1-102(A)(3) and DR 1-103(C) were intentional and caused actual injury to the legal system, the legal profession, and the public. Further, also as in *Huffman* and *Wyllie*, we have determined that no mitigating factors, but multiple aggravating factors, apply. However, as the court did in those cases, we also place only some

weight on the accused's prior disciplinary record as an aggravating factor, because the accused was not sanctioned for those prior violations until after he had committed the violations at issue here. Considering that case law, along with the ABA Standards, we conclude that the appropriate sanction for the accused's misconduct is a suspension from the practice of law for two years, to run consecutively to the accused's present suspension.

The accused is suspended from the practice of law for two years, with that period of suspension to run consecutively to the period of suspension imposed upon the accused in *In re Kluge*, 332 Or 251, 27 P3d 102 (2001).